■ Patricia A. Caminero, Also Known as Patricia Pinder, by Her Mother and Natural Guardian, Ana Patricia Pineda, Appellant, v New York City Health and Hospitals Corporation (Bronx Municipal Hospital Center), Respondent. [800 NYS2d 173]—

Order, Supreme Court, Bronx County (Douglas McKeon, J.), entered October 22, 2003, which denied plaintiff's motion for an order deeming timely, nunc pro tunc, a notice of claim previously served or for leave to file a late notice of claim, and granted defendant's cross motion to dismiss the complaint,

---

unanimously reversed, on the law, the facts and in the exercise of discretion, without costs, plaintiff's motion for an order deeming timely the previously served notice of claim granted, defendant's cross motion denied, and the complaint reinstated.

Ana Patricia Pineda gave birth to a daughter, prematurely, on February 8, 1994, at defendant New York City Health and Hospitals Corporation's Bronx Municipal Hospital Center. The infant was diagnosed with respiratory distress syndrome and was transferred to the neonatal intensive care unit, where she was placed on a ventilation system and a pulse oximeter was attached to her foot to monitor the oxygen saturation level in her blood. On February 19, 1994, according to an 11:45 A.M. entry in the infant's progress record, a plastic surgeon was "Called to see the infant for 'necrosis' of [right] foot '[secondary] to pulse oximeter placed too tightly around foot by staff,' which was noted today." The doctor's impression after examining her was "Superficial/Deep injury to [right] foot and 5th digit [secondary] to pressure from pulse oximeter."

A 2:00 P.M. entry the same day noted that the neonatologist spoke with the infant's mother and told her that "it is uncertain how this will heal," and that an incident report was filed. Another neonatologist noted, "Baby Pineda found with tight pulse oximeter probe taped around the [right] foot," and described the big toe and forefoot as "dark blue" and the fifth small toe as "very dark, discolored, almost black." The nursing notes for February 20, 1994 indicated that the infant's right foot was blue.

An entry in the Progress Record on March 2, 1994 by a plastic surgeon named Kutlu noted, "[F]orefoot continues to improve . . . [right] 5th toe remains necrotic/non-viable. [Plan]—allow toe to auto-amputate." The summary of the infant's discharge from the hospital on May 23, 1994 contains the following "Addendum": "[Right] small toe amputation [secondary to reduced blood] flow as a result of [oxygen saturation] monitor probe constriction. As per [physical therapist], it will not affect gait when infant starts to walk." Among the final diagnoses listed in the medical record are "gangrene" and "misadventure during medical care."

In March 1998, plaintiff served a notice of claim of negligence and medical malpractice "in the treatment and management of infant claimant's neonatal intensive care on or about February 19, 1994. The exact departures are not fully known to claimants at this time but include failure to monitor and supervise the application of pulse oximeter, applying the pulse oximeter too tightly to the infant's right foot, failure to re-position and/or

rotate the pulse oximeter, failure to observe, prevent and or correct necrosis, particularly of the fifth digit of the infant's right foot."

Plaintiff commenced this action on March 6, 1998. In its answer to the complaint, defendant "admit[ted] that on or about March 10, 1998 a purported notice of claim was presented to the Office of Legal Affairs of the New York City Health and Hospitals Corporation, and that more than thirty days have elapsed since such presentation and that no adjustment thereof has been made."

The plastic surgeon Dr. Kutlu was deposed by plaintiff on November 20, 2002.

On June 19, 2003, plaintiff moved for an order deeming her late notice of claim timely served or, in the alternative, for leave to file a late notice of claim (General Municipal Law § 50-e [5]). In support of the motion, she submitted, inter alia, an affidavit of Dr. Robert S. Shaiman, who stated his opinion to a medical degree of certainty that "there was a departure from the standard of care by the physician, nursing and respiratory care staff during the period prior to the plastic surgeon's consult on February 19, 1994 in the manner of applying the pulse ox[i]meter on PATRICIA A. CAMINERO's right foot. There was then a departure in the hospital staff's failure to frequently monitor, reposition and rotate the pulse ox[i]meter in the . . . period up to and including the time on the morning of February 19, 1994 when the plastic surgeon noted the necrosis." Dr. Shaiman stated that these departures were a proximate cause in the eventual auto-amputation and loss of the fifth toe of plaintiff's right foot.

The court denied the motion on the ground that plaintiff offered no excuse for moving to deem the late notice of claim timely served more than five years after serving it. This was an improvident exercise of discretion. While a reasonable excuse for the failure to serve the notice of claim within the statutory 90 days is a factor in determining whether to grant leave to serve a late notice, the absence of an excuse should not be fatal where the public corporation acquired actual knowledge of the essential facts constituting the claim within 90 days of its accrual or a reasonable time thereafter, and was not prejudiced by the delay (*see Chattergoon v New York City Hous. Auth.*, 197 AD2d 397, 398 [1993]). Here, by virtue of the hospital records made contemporaneously with the events giving rise to the claim, defendant had actual knowledge of the facts constituting the claim virtually from its inception, and was not prejudiced by plaintiff's delay in seeking the court's leave under General Mu-

nicipal Law § 50-e (5) (*see Matter of Williams v Bronx Mun. Hosp. Ctr.*, 205 AD2d 420 [1994]; *Matter of McMillan v City of New York*, 279 AD2d 280 [2001]). Defendant's claim of prejudice by reason of Dr. Kutlu's relocation out of state is unconvincing absent a showing that the doctor was actually unavailable; in fact, Dr. Kutlu was deposed in November 2002 (*see McMillan*). Concur—Marlow, J.P., Ellerin, Nardelli and Sweeny, JJ.