[938 NYS2d 77]

Zaquira Cartagena, an Infant, by her Mother and Natural Guardian, Wanderous Gilliam, Respondent, et al., Plaintiff, v New York City Health and Hospitals Corp., Appellant.

First Department, February 9, 2012

## APPEARANCES OF COUNSEL

*Michael A. Cardozo, Corporation Counsel,* New York City (*Karen M. Griffin* and *Francis F. Caputo* of counsel), for appellant.

*Wolf & Fuhrman, LLP,* Bronx (*Carole R. Moskowitz* of counsel), for respondent.

## OPINION OF THE COURT

CATTERSON, J.

In this appeal arising from an application to file a late notice of claim, we reiterate that in order for a defendant municipal hospital's medical record to provide actual notice of a claim, the essential facts underlying the claim, including that the plaintiff was injured, must be documented in the defendant's own medical record. Absent such documentation, the defendant in this case would be prejudiced by the nine-year delay in the filing of a notice of claim.

The infant plaintiff was allegedly injured during her mother's labor and delivery as a result of the defendant's medical malpractice. The infant was born on July 18, 1999 at North Central Bronx Hospital (hereinafter referred to as NCBH), a New York City Health and Hospitals Corporation (hereinafter referred to as HHC) facility. The record reflects that, at three weeks old, the infant was admitted for "shaking" and/or possible seizure disorder to Montefiore Medical Center, another hospital, unaffiliated with HHC. The Montefiore medical records show that the mother told doctors there that the infant had been "shaking since birth." Those records also show that the mother told doctors the infant had fallen on the floor when she was two-to-three days old; and that there was some family history of epilepsy. According to a diagnosis by a Montefiore doctor when

the infant was approximately seven months old, she was found to have a seizure disorder.

Nine years after the infant's birth, on November 21, 2008, the plaintiffs, the infant and mother, moved for leave to serve a late notice of claim on HHC. The plaintiffs alleged that the infant had suffered fetal distress, but that NCBH had allowed mother to labor for 48 hours which had resulted in injury to the infant. In further support of the motion, plaintiffs asserted in an affidavit that the hospital should have performed an emergency cesarean section. The mother stated that when the infant was born "she was purple . . . and she would shake all over her body, and her eyes would roll back." She further stated that she had complained about the infant's condition to the nurses at the time, but they told her there was nothing wrong. Hence, plaintiffs asserted that leave to file a late notice should be granted because they had met their burden of showing that HHC had actual, contemporaneous notice of the facts underlying the claim.

In opposition to the motion, HHC asserted that its hospital's records do not support the plaintiffs' allegations that it allowed prolonged fetal distress, and that, moreover, the plaintiffs failed to attach an expert affidavit establishing a nexus between any alleged complications during labor/delivery and the infant's injuries. More significantly, HHC asserted that the records directly contradict the contention that there was anything wrong with the infant, or that they include any reference to the mother's report of the infant "shaking" or rolling back her eyes. On the contrary, HHC argued that the medical records established that the infant was a healthy newborn.

In reply, the plaintiffs, for the first time, annexed records from Montefiore Medical Center. These records document, inter alia, that three weeks after her discharge from NCBH, the mother told doctors at the unaffiliated hospital that the infant had a "history of seizures since birth." The plaintiffs annexed the Montefiore records to show that "the infant has throughout her life been documented as having suffered seizures since birth and/or the second day of life."

The motion court granted the motion to file a late notice of claim pursuant to General Municipal Law § 50-e (5), as to the infant plaintiff, but denied the motion as to the mother as time-barred. The motion court, relying on HHC records of the mother's labor and delivery as well as the mother's affidavit that she had complained about her infant's "shaking" to the

NCBH nurses at the time, reasoned that the defendant had "actual notice of the facts underlying the claim." Hence, the court concluded that the delay in notice would cause HHC only "some prejudice in investigating the claim." HHC appeals. For the reasons set forth below, we find that HHC had no actual notice of the facts underlying the malpractice claim, and would be substantially prejudiced by receipt of the notice of the infant plaintiff's (plaintiff) claim nine years after the alleged malpractice took place.

Well-established precedent prohibits the plaintiff's use of undocumented purported statements made to unnamed medical personnel to meet her burden of establishing that HHC had actual notice of the facts underlying the claim. Where a court in its discretion, permits a plaintiff to serve a late notice of claim on a municipal entity, it must consider a number of factors. (See General Municipal Law § 50-e [5].) Among the factors that the court considers is whether the entity acquired actual knowledge/ had actual notice of the facts underlying the claim within 90 days or a reasonable time thereafter. (General Municipal Law § 50-e [5]; see also Williams v Nassau County Med. Ctr., 6 NY3d 531, 535 [2006].)

A municipal hospital corporation has "actual knowledge" of a claim when it creates a contemporaneous medical record containing the essential facts constituting the alleged malpractice. (Caminero v New York City Health & Hosps. Corp. [Bronx Mun. Hosp. Ctr.], 21 AD3d 330, 332-333 [1st Dept 2005].) In such a case, a delay in investigation is not prejudicial because the hospital has been in possession of the medical record since the claim arose. (See Matter of Kelley v New York City Health & Hosps. Corp., 76 AD3d 824 [1st Dept 2010]; Schwartz v Montefiore Hosp. & Med. Ctr., 305 AD2d 174 [1st Dept 2003].)

Conversely, merely creating and possessing a medical record where there is nothing in that record to suggest that "the medical staff, by its acts or omissions, inflicted any injury on plaintiff during the birth process," does not constitute actual knowledge of facts underlying a claim. (Williams, 6 NY3d at 537.) It is the plaintiff's burden to show that HHC had actual notice. (Matter of Lauray v City of New York, 62 AD3d 467 [1st Dept 2009].)

Thus, to establish that HHC had actual notice of the facts underlying the claim, the plaintiff was obliged to show that its hospital records indicated or noted an injury to the infant plaintiff. (See e.g. Medley v Cichon, 305 AD2d 643, 644 [2d Dept 2003] [medical records reflected that the infant had to be

resuscitated at birth and had an Apgar score of 0]; *Matter of Tomlinson v New York City Health & Hosps. Corp.*, 190 AD2d 806, 807 [2d Dept 1993] [infant's disability, cerebral palsy, was apparent at her birth]; *cf. Williams*, 6 NY3d at 537 [infant's Apgar score of 8 was satisfactory, and there was little to suggest that he would develop epilepsy a year later]; *Bucknor v New York City Health & Hosps. Corp. [Queens Hosp. Ctr.]*, 44 AD3d 811 [2d Dept 2007] [infant's Apgar score was 7 and he was discharged with no medical problems; thus, there was no reason to predict that he would develop autism].)

In this case, the hospital records directly contradict the plaintiff's assertion that the infant suffered any injury. Therefore, even if the HHC's records contained any evidence that its facility deviated from the standard of care in the mother's delivery it would be irrelevant because the records establish that the infant in this case had a normal Apgar score of 9 at birth.* Further, the records show that during the infant's time in the hospital nursery, she was alert and active, with no neurological abnormalities. The record does not reflect that the infant experienced any distress or other problems. There are no seizures or seizure-like symptoms recorded in the hospital record that would provide HHC with notice that the infant had suffered or was suffering an injury. The mother and infant were discharged on July 21, 1999, and did not return to the hospital for any treatment or care.

The plaintiff's reliance on undocumented contradictory observations made to unnamed personnel, or the records of a different unaffiliated hospital as a basis for imputing actual notice or knowledge to HHC, is misplaced. Well-established precedent dictates that actual notice may be attributed to a municipal entity when the contemporaneous medical record containing the essential facts was *created by the municipal entity*, and the record has been *in its possession* since the claim arose. (*See Matter of Kelley*, 76 AD3d at 827; and *Caminero*, 21 AD3d at 332-333.)

In this case, neither the mother's sworn affidavit, nor the undocumented contradictory observations referred to in the affidavit, were part of the record created by HHC, and therefore they certainly were not in HHC's possession until the plaintiffs filed their motion. Thus, the mother's observations about her infant

---

\* Apgar is a test performed at one and five minutes after birth. A score of 8 or 9 out of 10 is normal and indicates the newborn is in good condition.

purportedly made to NCBH nurses—even if the observations were accurate and even if they were, indeed, made to the hospital staff at the time of the birth—cannot be viewed as actual notice or actual knowledge of facts underlying the plaintiff's claim.

For the same reasons, the plaintiff's attempt to impute actual notice of the facts to HHC by annexing the records of a different hospital must fail. In annexing these records to their motion papers, the plaintiffs stated that "an infant's claim should not be defeated because of a lack of documentation of a mother's complaints of injury, which clearly occurred at or near the time of birth at a NYCHHC facility."

However, a lack of documentation is precisely what is fatal to the plaintiff's claim, since documentation in records created by the hospital and in the hospital's possession is the only way the plaintiff can establish that HHC acquired actual knowledge of the facts underlying the claim within the statutory 90-day period.

Finally, where there is no "actual knowledge," a long delay is substantially prejudicial because the medical personnel who could testify to the facts at the time of the alleged malpractice may no longer be available, or, if they are, their memories are no longer fresh. (*See e.g. Williams*, 6 NY3d at 539 [10-year delay substantially prejudiced defendant hospital]; *Matter of Kelley*, 76 AD3d at 829 ["the likelihood of the staff having any recollection of petitioner is diminished by the passage of (one year)"], citing *Matter of Nieves v New York Health & Hosps. Corp.*, 34 AD3d 336 [1st Dept 2006]; *Ocasio v New York City Health & Hosps. Corp. [Morrisania Neighborhood Family Care Ctr.]*, 14 AD3d 361 [1st Dept 2005] [9¹/₂-year delay substantially prejudiced defendant]; *Matter of Matarrese v New York City Health & Hosps. Corp.*, 215 AD2d 7 [2d Dept 1995], *lv denied* 87 NY2d 810 [1996] [eight-year delay was prejudicial because the physicians who delivered, examined, and treated the infant were no longer employed by the hospital].)

In this case, as the motion court noted, the attending physician who admitted the mother and made the decision to induce labor is no longer employed at the hospital, and the obstetrician who delivered the infant resides outside of the state. Therefore, the defendant's ability to defend itself against the mother's allegations is substantially prejudiced by the passage of nine years.

Accordingly, the order of Supreme Court, Bronx County (Douglas E. McKeon, J.), entered April 1, 2010, which, insofar as ap-

pealed from, granted the infant plaintiff's motion for leave to serve a late notice of claim upon defendant, should be reversed, on the law and the facts, without costs, and the motion denied.

Tom, J.P., Andrias, Acosta and Renwick, JJ., concur with Catterson, J.

Order, Supreme Court, Bronx County entered April 1, 2010, reversed, on the law and the facts, without costs, and the motion denied.