██ In the Matter of GABRIELA ROJAS, Respondent, v NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, Appellant. [6 NYS3d 294]—

In a proceeding pursuant to General Municipal Law § 50-e (5) for leave to serve a late notice of claim or to deem a late notice of claim timely served nunc pro tunc, the appeal is from an order of the Supreme Court, Kings County (Knipel, J.), dated December 11, 2012, which granted the petition.

Ordered that the order is affirmed, with costs.

From October 2010 until May 31, 2011, the petitioner, Gabriela Rojas, received prenatal care at Bellevue Hospital (hereinafter the hospital), a facility owned and operated by the appellant, New York City Health and Hospitals Corporation (hereinafter HHC). In April 2011, the fetus was found to be in a breech position. On May 13, 2011, hospital personnel attempted an unsuccessful procedure to manipulate the fetus into the correct position.

On May 22, 2011, the petitioner went to the hospital's emergency room complaining of decreased fetal movement. After tests were performed, hospital personnel observed a "good result" and a fetal heart rate with "positive accelerations." The petitioner was discharged from the hospital. She returned the next day for a regularly scheduled clinic appointment. The petitioner had blood drawn for testing on May 30, 2011, and was scheduled for a delivery by cesarean section on May 31,

2011, at 39 weeks of gestation. The petitioner alleges that she made complaints of decreased fetal movement on May 29 and May 30, and at least one record generated by the hospital indicates that she made such a complaint on May 30. When the petitioner arrived at the hospital for her scheduled delivery on May 31, 2011, it was discovered that the fetus had died in utero.

On June 2, 2011, the petitioner returned to the hospital for a medically induced delivery of the stillborn fetus, and she requested an autopsy. The petitioner requested the autopsy report at subsequent visits to the hospital on June 16, 2011, and July 19, 2011, and during telephone calls to hospital personnel on July 20, 2011, and August 3, 2011. Each time, she was advised that the report was not yet ready. On October 24, 2011, the petitioner returned to the hospital and renewed her request for the autopsy report, to no avail. On November 17, 2011, after the petitioner retained counsel, she requested her medical records from the hospital. The petitioner received her medical records on or about December 29, 2011, but they did not include the autopsy report. On January 20, 2012, the petitioner made another unsuccessful trip to the hospital in an effort to obtain the report. By letter dated January 30, 2012, she made a written request to the Office of the Chief Medical Examiner (hereinafter OCME) for the autopsy report. However, the OCME did not perform the autopsy.

On February 3, 2012, more than eight months after the petitioner delivered the stillborn fetus and requested an autopsy, the hospital mailed the petitioner a copy of the autopsy report, and she received it on February 7, 2012. The report stated that the autopsy was performed on June 2, 2011, and that the report was completed on October 18, 2011. The report revealed, inter alia, the presence of "[a]cute, necrotizing chorioamnionitis" in the placenta, and that the "[s]evere inflammation [present here] is associated with prolonged amniotic fluid infection and is the likely cause of death in this term baby."

On or about February 14, 2012, one week after she received the autopsy report, the petitioner served a notice of claim upon the HHC. In the notice of claim, she alleged that (1) she complained of decreased fetal movement on May 29 and May 30, 2011, (2) her complaints were ignored by hospital personnel, and (3) the death of her fetus was caused by the hospital's negligence, inter alia, in failing to perform testing in connection with her complaint of decreased fetal movement and failing to diagnose and treat prolonged amniotic fluid infection.

Thereafter, she filed the instant petition pursuant to General Municipal Law § 50-e (5) to deem the notice of claim to be timely served nunc pro tunc. The Supreme Court granted the petition.

In determining whether to grant an application for leave to serve a late notice of claim or to deem a late notice of claim timely served nunc pro tunc, the court must consider all relevant circumstances, including whether (1) the public corporation acquired actual knowledge of the essential facts constituting the claim within 90 days after the claim arose or a reasonable time thereafter, (2) the claimant demonstrated a reasonable excuse for the failure to serve a timely notice of claim, and (3) the delay would substantially prejudice the public corporation in its defense on the merits (see General Municipal Law § 50-e [5]; *Matter of Destine v City of New York*, 111 AD3d 629 [2013]; *Platt v New York City Health & Hosps. Corp.*, 105 AD3d 1026, 1027 [2013]; *Matter of Felice v Eastport/South Manor Cent. School Dist.*, 50 AD3d 138, 147 [2008]; *Matter of Acosta v City of New York*, 39 AD3d 629, 630 [2007]). "While the presence or the absence of any one of the factors is not necessarily determinative, whether the municipality had actual knowledge of the essential facts constituting the claim is of great importance" (*Matter of Iacone v Town of Hempstead*, 82 AD3d 888, 888-889 [2011] [citations omitted]; see *Randolph v Westchester Med. Ctr.*, 122 AD3d 822, 823 [2014]; *Matter of Felice v Eastport/South Manor Cent. School Dist.*, 50 AD3d at 147). "A petition for leave to serve a late notice of claim is addressed to the sound discretion of the court" (*Matter of Harper v City of New York*, 69 AD3d 939, 940 [2010]; see *Nurena v Westchester County*, 120 AD3d 781, 781 [2014]).

We agree with the Supreme Court's conclusion that the petitioner had a reasonable excuse for not serving a timely notice of claim because the hospital failed to provide the autopsy report for her stillborn fetus for eight months despite her multiple, prompt requests for it (*cf. Matter of Bell v City of New York*, 100 AD3d 990 [2012]). The petitioner served the notice of claim just a few days after she received the autopsy report concerning the stillborn fetus, and filed the instant petition, seeking to deem her notice of claim timely served, approximately five weeks later.

Further, the petitioner made a sufficient showing that HHC had actual knowledge of the essential facts constituting her claims within 90 days of accrual or within a reasonable time thereafter. "In medical malpractice cases, when the medical records themselves contain facts that detail both the procedures

used and the claimant's injuries, and suggest that the relevant public corporation may be responsible for those injuries, the public corporation will be held to have had actual knowledge of the essential facts constituting the claim" (*Matter of Felice v Eastport/South Manor Cent. School Dist.*, 50 AD3d at 149; *see Williams v Nassau County Med. Ctr.*, 6 NY3d 531, 535-537 [2006]). The Supreme Court noted that the petition would have been stronger had she submitted an expert affirmation in support of it, but the court nonetheless concluded that the basic facts underlying the malpractice claims could be gleaned from the petitioner's medical records. We agree.

Among other things, the hospital's records revealed that the petitioner complained of decreased fetal movement, and that the fetus died in utero at or near the time that the petitioner was scheduled for delivery. The records generated after the fetus died showed that the petitioner continually tried to obtain the autopsy report to learn what happened to the fetus. By October 18, 2011, if not sooner, the hospital was aware that the likely cause of the death of the fetus was "[s]evere inflammation [associated with] prolonged amniotic fluid infection." Further, the petitioner's November 2011 requests for her medical records were made by counsel. In sum, we agree with the Supreme Court that the petitioner demonstrated that HHC acquired timely, actual knowledge of the essential facts constituting the claim (*see Williams v Nassau County Med. Ctr.*, 6 NY3d at 535-537; *Castaneda v Nassau Health Care Corp.*, 89 AD3d 782, 783 [2011]; *Matter of Chambers v Nassau County Health Care Corp.*, 50 AD3d 1134, 1135 [2008]; *cf. Matter of Kaur v New York City Health & Hosps. Corp.*, 82 AD3d 891, 892 [2011]; *Matter of Gonzalez v City of New York*, 60 AD3d 1058, 1059-1060 [2009]; *Beretey v New York City Health & Hosps. Corp. [Elmhurst Hosp. Ctr.]*, 56 AD3d 591, 593 [2008]).

The Supreme Court correctly determined that HHC was not substantially prejudiced by the delay in receiving notice of the claim because the six-month delay, which was caused by HHC, was relatively short, and HHC did not specifically claim that any of its witnesses had become unavailable or that memories had significantly faded prior to the service of the notice of claim (*see Gibbs v City of New York*, 22 AD3d 717, 719-720 [2005]; *Matter of Welch v Board of Educ. of Saratoga Cent. School Dist.*, 287 AD2d 761, 764 [2001]). The petitioner further demonstrated the absence of prejudice by virtue of the fact that HHC acquired timely actual notice of the essential facts underlying this claim.

Accordingly, the Supreme Court providently exercised its discretion in granting the petition, and deeming the late notice of claim timely served nunc pro tunc. Leventhal, J.P., Hall, Maltese and Barros, JJ., concur.