OPINION OF THE COURT
Pigott, J.
The issue on this appeal is whether the Appellate Division abused its discretion in affirming Supreme Court’s denial of plaintiff’s motion for leave to serve a late notice of claim on defendant New York City Health and Hospitals Corp. (HHC). We hold that it did not.
General Municipal Law § 50-e (1) (a) requires that a notice of claim be served on a public corporation “within ninety days after the claim arises.” In medical malpractice actions, “the cause of action accrues on the date when the alleged original negligent act or omission occurred” (Young v New York City Health & Hosps. Corp., 91 NY2d 291, 295 [1998] [citation omitted]).
*675 A party seeking leave to serve a late notice of claim must make an application to the court for that relief, and the court, in its discretion, may extend the party’s time to serve a late notice (see General Municipal Law § 50-e [5]). In making that determination, among other things, “the court shall consider, in particular, whether the public corporation . . . acquired actual knowledge of the essential facts constituting the claim within [90 days] or within a reasonable time thereafter.”[1] Because the decision to grant or deny an application for an extension under section 50-e (5) is “purely a discretionary one” (Cohen v Pearl Riv. Union Free School Dist., 51 NY2d 256, 265 [1980]), our review is limited to whether the Appellate Division abused its discretion in making such a determination (see Williams v Nassau County Med. Ctr., 6 NY3d 531, 539 [2006], citing Matter of Murray v City of New York, 30 NY2d 113, 119 [1972]; see also Pearson v New York City Health & Hosps. Corp. [Harlem Hosp. Ctr.], 10 NY3d 852, 854 [2008]).
Plaintiff was born prematurely by emergency cesarean section on June 15, 2005. He was transferred to the neonatal intensive care unit and discharged in stable condition on August 10, 2005.
On January 16, 2007, more than 90 days after the claim arose, without first obtaining leave of court as required by General Municipal Law § 50-e (5), plaintiff, by his mother and natural guardian, served a notice of claim against HHC alleging negligence and malpractice arising out of, among other things, HHC’s failure to properly treat and manage his mother’s prenatal care up until the date of plaintiff’s delivery, and its failure to obtain informed consent with regard to plaintiff’s neonatal and pediatric care. It was claimed that plaintiff sustained brain damage, cognitive defects, developmental, speech and psychomotor delays, fetal and respiratory distress and seizure disorder as a result of such negligence and malpractice.
Plaintiff then brought suit against HHC in August 2008,[2] but waited until December 2010, over five years after the claim arose, to move for permission to serve a late notice of claim. In *676 support of that motion, plaintiff submitted voluminous medical records along with affidavits from medical experts who, based on those records, opined that HHC’s deviations from the standard of care resulted in plaintiff’s injuries.
HHC cross-moved to dismiss the complaint on the ground that plaintiff failed to comply with General Municipal Law § 50-e (5). Supreme Court denied plaintiff’s motion and granted HHC’s cross motion (2012 NY Slip Op 30190[U] [Sup Ct, NY County 2012]).[3]
A divided Appellate Division affirmed. The majority found unreasonable the excuse by plaintiff’s counsel “that he waited to make the motion [for leave to serve a late notice of claim] until approximately three years and ten months after filing the untimely notice of claim because he needed to receive the medical records from HHC” (120 AD3d 1082, 1083 [1st Dept 2014] [citation omitted]). It also held that plaintiff failed to establish “that the medical records put HHC on notice that the alleged malpractice would subsequently give rise to brain damage as a result of birth trauma and hypoxia or that he would subsequently develop other deficits, delays, and disorders” (id.). The dissenters, relying on our decision in Williams, asserted that HHC’s hospital chart “demonstrate [d] that HHC had actual notice of the essential facts constituting the claim within 90 days of accrual or a reasonable time thereafter,” stating that such records “merely need to suggest injury attributable to malpractice” (120 AD3d at 1093). In the dissent’s view, the affidavits of plaintiff’s experts established that HHC’s “delay in performing an emergency cesarean section and in providing immediate ventilation through intubation, and its discussion of subsequent neurological sequelae with the parents after the diagnosis of the grade III [intraventricular hemorrhage], while not dispositive, suggested] injury attributable to medical malpractice” (id. [emphasis supplied]).
Plaintiff appealed to this Court as of right pursuant to CPLR 5601 (a), and we now affirm.
The affidavits submitted by plaintiff’s experts simply interpreted the medical records and posited that HHC could have engaged in alternative courses of treatment which, in *677 their view, would have produced different results, and that plaintiffs health complications could have been avoided had HHC taken a different approach. However, mere assertions that a different course of treatment could have been followed do not address whether HHC had actual knowledge of the essential facts necessary to properly defend itself in the underlying action. On this record, it cannot be said that the lower courts abused their discretion in denying service of a late notice of claim.
In Williams, we held that section 50-e (5)’s actual knowledge requirement “contemplates ‘actual knowledge of the essential facts constituting the claim,’ not knowledge of a specific legal theory” (Williams, 6 NY3d at 537). A medical provider’s mere possession or creation of medical records does not ipso facto establish that it had “actual knowledge of a potential injury where the records do not evince that the medical staff, by its acts or omissions, inflicted any injury on plaintiff during the birth process” (id. [emphasis supplied]).
Contrary to plaintiff’s argument and the rationale of the dissent below, the medical records must do more than “suggest” that an injury occurred as a result of malpractice. That argument implies that so long as medical experts reasonably disagree as to whether, based on their respective interpretations of the medical records, the medical staff deviated from the standard of care, a factual question is present and an application for service of late notice must be granted as a matter of law. While we stated in Williams that there was “little to suggest injury attributable to malpractice” in that particular case, our use of the word “suggest” was not intended to deviate from our holding in that case that the medical records must “evince that the medical staff, by its acts or omissions, inflicted an[ ] injury on plaintiff” in order for the medical provider to have actual knowledge of the essential facts (Williams, 6 NY3d at 537).
For purposes of determining whether leave to serve a late notice of claim should be granted, determinations concerning a medical provider’s “actual knowledge” and whether the medical records “evince” that the medical provider inflicted injury on the plaintiff rest in the sound discretion of the court. Our review is thus limited to whether there was an abuse of discretion in denying service of late notice. We discern no such abuse of discretion.
*678 Accordingly, the order of the Appellate Division should be affirmed, with costs.

. Section 50-e (5) additionally states that there are “other relevant facts and circumstances” that the court must also consider in making its determination whether late service should be permitted.

. With one exception not relevant here, the notice of claim is “an element of the substantive cause of action and as such its satisfaction must be pleaded in the complaint” (Siegel, NY Prac § 32 [5th ed]). Plaintiff’s complaint *676 is not included in this record, thus raising an additional question whether plaintiff satisfied this condition precedent to bring suit.

. Supreme Court granted plaintiff’s motion for reargument, and, upon reargument, adhered to its prior determination.