Matter of Townson v New York City Health & Hosps. Corp. (2018 NY Slip Op 00607)





Matter of Townson v New York City Health & Hosps. Corp.


2018 NY Slip Op 00607


Decided on February 1, 2018


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 1, 2018

Friedman, J.P., Manzanet-Daniels, Kapnick, Kern, Singh, JJ.


4587N 805103/16

[*1] In re John Townson, Petitioner-Respondent,
v
New York City Health and Hospitals Corporation, Respondent-Appellant.


Zachary W. Carter, Corporation Counsel, New York (Max O. McCann of counsel), for appellant.
Blyer & Kurland, P.C., Jericho (Steven R. Blyer of counsel), for respondent.



Order and judgment (one paper), Supreme Court, New York County (Joan B. Lobis, J.), entered June 24 2016, granting the petition for leave to serve a late notice of claim, affirmed, without costs.
The issue on this appeal is whether Supreme Court properly exercised its discretion in granting petitioner's application for leave to serve on respondent New York City Health and Hospitals Corporation a notice of claim after the statutory 90 days had expired. We hold that it did.
On December 12, 2014, petitioner John Townson (Townson), an electrician, was treated at Bellevue Hospital's (Bellevue) emergency room for a deep laceration to his right thumb. Townson had cut his thumb while cutting electrical wire with an "electric knife." X-rays taken at the emergency room indicated no broken bones or metal left behind in the wound. Townson's laceration was sutured and he was discharged the same day. He was told he could go back to work in two days.
A few days later, Townson found he could not bend or flex his thumb. Townson never returned to Bellevue, or to any other Health and Hospitals Corporation (HHC) facility for further treatment of his thumb. After a few months, he consulted with Dr. Goldstein, not affiliated with HHC, who recommended physical therapy for his thumb. On March 19, 2015, an MRI of Townson's thumb revealed a torn flexor tendon.
In or about April 2015 — less than a month after the 90-day notice of claim period expired — Townson retained an attorney.
The attorney proceeded to send three separate letter requests for Townson's medical records to HHC and Bellevue in April, June and July of 2015. After not receiving any reply, Townson's attorney telephoned Bellevue's medical records department in August 2015. By March 2016, Townson still had not received medical records from HHC, and petitioned Supreme Court for leave to file a late notice of claim before the applicable statute of limitations expired.
Supreme Court granted Townson's petition finding that although the medical records did not provide actual notice to HHC because they did not contain the essential underlying facts, Townson adequately pleaded excusable error due to HHC's refusal to forward the requested medical records to Townson. The court also found no substantial prejudice to HHC as a result of the delay because HHC was not "hindered in its attempt to investigate" or defend the claim. HHC has appealed.
Under General Municipal Law § 50-e(1)(a), a notice of claim must be served on a public corporation "within ninety days after the claim arises." However, a court may, in its discretion, permit a plaintiff to serve a notice of claim on a municipal entity after the 90-day period (see Cartagena v New York City Health & Hosps. Corp., 93 AD3d 187, 190 [1st Dept 2012]). In making this determination, the court may consider whether there was a reasonable excuse for the delay, actual knowledge on the part of HHC of the essential facts constituting the claim within [*2]the 90-day statutory period or within a reasonable time thereafter and substantial prejudice due to the delay (General Municipal Law § 50-e[5]; Wally G. v New York City Health & Hosps. Corp [Metro. Hosp.], 27 NY3d 672, 675 [2016]); Williams v Nassau County Med. Ctr., 6 NY3d 531, 535 [2006]; Matter of Kelley v New York City Health & Hosps. Corp., 76 AD3d 824, 825 [1st Dept 2010]). None of these enumerated factors is controlling (Dardzinska v City of New York, 123 AD3d 483 [1st Dept 2014]). However, "[w]hile the presence or the absence of any one of the factors is not necessarily determinative, whether the municipality had actual knowledge of the essential facts constituting the claim is of great importance" (Matter of Rojas v New York City Health & Hosps. Corp., 127 AD3d 870, 872 [2d Dept 2015] [internal quotation marks omitted]).
General Municipal Law § 50-e "contains a nonexhaustive list of factors that the court should weigh, and compels consideration of all relevant facts and circumstances" (Williams, 6 NY3d at 539). Therefore, Supreme Court's decision to grant or deny a motion to serve a late notice of claim is purely a discretionary one so long as the determination is based on the factors set forth in General Municipal Law § 50-e and is supported by record evidence (Matter of Newcomb v Middle Country Cent. Sch. Dist., 28 NY3d 455, 465 [2016]; Wally G., 27 NY3d at 675. Here, when weighing all the relevant facts and circumstances, Supreme Court properly exercised its discretion in allowing service of a late notice of claim, even though not all factors weighed in Townson's favor.
The dissent notes, and it is undisputed, that the medical records do not contain any indication of Townson's torn tendon. However, a hospital's actual knowledge of a potential malpractice claim may be imputed where it possesses medical records that " evince that the medical staff, by its acts or omissions, inflicted an[] injury on plaintiff'" (Wally G., 27 NY3d at 677, quoting Williams, 6 NY3d at 537). HHC has actual knowledge "of a claim when it creates a contemporaneous medical record containing the essential facts constituting the alleged malpractice" (Cartagena, 93 AD3d at 190).
The actual knowledge requirement "contemplates actual knowledge of the essential facts constituting the claim,' not knowledge of a specific legal theory" (Wally G., 27 NY3d at 677, quoting Williams, 6 NY3d at 537). Facts found in medical records that merely "suggest" the possibility of malpractice are insufficient, as a plaintiff must demonstrate a hospital's actual knowledge of negligent acts or omissions which result in injury to a plaintiff (Wally G., 27 NY3d at 677). Supreme Court correctly found that HHC did not acquire actual knowledge of Townson's malpractice claim through the medical records.
The dissent concedes that Townson, Bellevue, Dr. Goldstein and the physical therapy practitioners did not learn of Townson's torn tendon until March 19, 2015, after the 90-day period had expired. The dissent argues that Townson's excuse may have been reasonable had he requested leave to file shortly after March 19, 2015, when he learned of the torn tendon. In the dissent's view the delay in serving the notice of claim is not excusable.
We disagree. Townson's claim of malpractice is premised upon a theory that the emergency room failed to evaluate whether internal, connective soft tissue damage resulted from the deep laceration. Townson's counsel, at the time he was retained, which was immediately after Townson had learned of the torn tendon, promptly sent a request to HHC for the medical records to discern the viability of Townson's malpractice claim, but HHC failed to respond on multiple occasions (see e.g. Matter of Rojas, 127 AD3d at 872 [the petitioner's one-year delay in seeking leave to file a late notice of claim was reasonable, in light of evidence that HHC failed to respond to "multiple, prompt requests" for the autopsy report during an eight month period]; see also Cassidy v County of Nassau, 84 AD2d 742 [2d Dept 1981] [delay in seeking leave to file a late notice of claim excused where delay could be attributed to the county's failure to respond to the petitioner's counsel's multiple requests for medical records that were needed to demonstrate the claim]).
The dissent's reliance upon Alexander v City of New York (2 AD3d 332 [1st Dept 2003]) and Potts v City of N.Y. Health & Hosps. Corp. (270 AD2d 129 [1st Dept 2000]) is misplaced. In Alexander we rejected the excuse that the petitioner was awaiting an accident report as liability was not based on the report. Here, HHC's potential liability is necessarily predicated upon the medical records of Townson's treatment at Bellevue. In Potts we found that HHC's delay in [*3]responding to counsel's multiple requests did not justify counsel's delay in filing the petition as the hospital records were unnecessary to the petitioner filing a late notice of claim. Here, unlike Potts, Townson needed to fully review the medical records to determine whether HHC failed to examine the soft tissues supporting the thumb.
Moreover, an attorney and client should not be penalized for waiting for medical records to file a complete and accurate notice of claim. Under these circumstances, the motion court providently exercised its discretion in finding that Townson had a reasonable excuse for not serving a timely notice of claim.
The burden on the issue of substantial prejudice potentially associated with a late notice of claim rests in the first instance with the petitioner (see Matter of Newcomb, 28 NY3d at 466-467). This showing "need not be extensive, but must present some evidence or plausible argument that supports a finding of no substantial prejudice" (id. at 466).
Townson has met this initial burden. Townson sent multiple letters from his counsel seeking his treatment records within four to seven months of his treatment, including HIPAA information and treatment dates, thereby alerting HHC to the potential for a claim. Additionally, HHC's own delay in responding to Townson's multiple requests for medical records is responsible for much of Townson's delay in filing the notice of claim, and any resultant prejudice. The nature of the serious wound, the photographic evidence of the wound, and the issue of whether the medical records reflected a negligent omission to fully evaluate the extent of his injuries, involved circumstances where faded memories are less likely to be an issue, and less likely to compromise a defense against the negligent "omission" malpractice claim. Although Supreme Court erred by placing the initial burden on HHC, on this record, we find that Townson met his burden by presenting some evidence to show no substantial prejudice to HHC.
Once a petitioner has made this initial showing, "the public corporation must respond with a particularized evidentiary showing that the corporation will be substantially prejudiced if the late notice is allowed" (Matter of Newcomb, 28 NY3d at 467). Although lack of actual knowledge and lengthy delays may be important factors in determining substantial prejudice, mere inferences cannot support this finding without support in the record, including changes in personnel and the fading memories of witnesses (id. at 465-466). HHC has not satisfied its burden of establishing that it is substantially prejudiced by the late notice of claim.
Indeed, "there may be scenarios where, despite a finding that the public corporation lacked actual knowledge during the statutory period or a reasonable time thereafter, the public corporation nonetheless is not substantially prejudiced by the late notice" (id. at 467). We find this is the case here. HHC has only made general assertions that memories fade with time where emergency room physicians treat thousands of patients throughout a year. There is nothing in the record supporting these conclusory
assertions, which are adopted by the dissent. HHC does not allege that Townson's treating emergency physician is no longer in its employ, or that such physician has claimed a lack of recollection of the treatment in question. As the record is absent of any particularized evidentiary showing, HHC has failed to show how it will be substantially prejudiced if the late notice of claim is allowed.
Finally, it is worth emphasizing that the motion court's decision in granting Townson's application for an extension is " purely a discretionary one'" (Wally G., 27 NY3d at 675, quoting Cohen v Pearl Riv. Union Free School Dist., 51 NY2d 256, 265 [1980]). Accordingly, the proper inquiry is whether the motion court providently exercised its discretion in granting Townson's application (Pearson v New York City Health & Hosps. Corp., 10 NY3d 852 [2008]). As was aptly pointed out in Gecaj v Gjonaj Realty & Mgt. Corp. (149 AD3d 600, 612 [1st Dept 2017, Friedman, J., dissenting]), this Court's "power to substitute its own discretion for that of Supreme Court. . .should be sparingly exercised" (emphasis added). Under the liberal standard of General Municipal Law § 50-e(1)(a), the motion court providently exercised its discretion in granting the petition, where, among other things, Townson proffered a reasonable excuse for the filing delay, and HHC has not established substantial prejudice even though it did not receive timely actual knowledge of Townson's malpractice claim.
All concur except Friedman, J.P. who dissents in a memorandum as follows:




FRIEDMAN, J.P. (dissenting)


I respectfully dissent from the majority's affirmance of the order granting the petition for leave to serve a late notice of claim pursuant to General Municipal Law § 50-e(5). In considering this petition by a competent adult claimant, there are three relevant factors: (1) whether respondent had actual knowledge of the claim within the 90-day notice period or within a reasonable time thereafter; (2) whether petitioner had a reasonable excuse for his delay in serving the notice; and (3) whether respondent suffered any prejudice as a result of the delay (see e.g. Plaza v New York Health & Hosps. Corp. [Jacobi Med. Ctr.], 97 AD3d 466, 467 [1st Dept 2012], affd 21 NY3d 983 [2013]). While "the presence or absence of any one factor is not determinative" (Plaza, 97 NY3d at467 [internal quotation marks omitted]), in my view, the record establishes that petitioner failed to satisfy any of the three factors. Accordingly, notwithstanding Supreme Court's "broad discretion" (Matter of Newcomb v Middle Country Central Sch. Dist., 28 NY3d 455, 465 [2016]) in considering applications of this kind, that discretion was abused in this instance or, at a minimum, so improvidently exercised that this Court should substitute its own discretion for that of Supreme Court. I would therefore reverse and deny the petition.
The petition is supported by petitioner's affidavit, sworn to May 6, 2015 — about 10 months before the petition itself was filed in Supreme Court on March 4, 2016. Petitioner, an electrician, states that he lacerated his right thumb with an electric knife while working on December 12, 2014. He was treated that day at the Bellevue Hospital emergency room, operated by respondent New York City Health and Hospitals Corporation (HHC). At Bellevue, petitioner's right hand was x-rayed "to determine if the bone was fractured and whether a piece of metal was still in [his] thumb." The x-rays were negative, and the wound was sutured by a resident. Petitioner was discharged with instructions that he could return to work after two days. When petitioner subsequently found himself unable to flex the thumb, he sought further attention for this injury from Dr. Goldstein, a physician in private practice, who sent him to a physical therapist. When the condition failed to improve after 12 weeks of physical therapy, Dr. Goldstein referred petitioner to an orthopedist, Dr. Wertlieb, who examined him on March 5, 2015, and thereupon ordered an MRI. On March 19, 2015, Dr. Wertlieb told petitioner that the MRI had revealed a torn flexor tendon, and that the stiff condition of his thumb might not improve.[FN1]
Shortly after learning about his torn tendon on March 19, 2015, petitioner engaged his present counsel. In his affirmation, counsel avers that, after consulting with petitioner, he sent the medical records department at Bellevue a form letter, dated April 6, 2015, requesting a copy of the records of petitioner's treatment, with an attached authorization. Having received no [*4]response from Bellevue, counsel resent the same letter (marked "SECOND REQUEST") on May 19, 2015, and then again (marked "THIRD REQUEST") on July 7, 2015. On August 4, 2015, having still received no response, counsel called the Bellevue records department to ask when the records would be sent. As of the date of the filing of the petition — March 4, 2016, seven months after his last contact with Bellevue — counsel still had received no records. Counsel states that he filed the petition without having received the records because "the one year and 90 days limit [was] fast approaching."[FN2]
The majority and I are in agreement that petitioner failed to make a favorable showing on the first factor to be considered on this application, namely, whether HHC had actual knowledge of the claim within the 90-day notice period or a reasonable time thereafter — a factor that the majority acknowledges to be "of great importance" (Matter of Rojas v New York City Health & Hosps. Corp., 127 AD3d 870, 872 [2d Dept 2015] [internal quotation marks omitted]). The Court of Appeals has recently reaffirmed that "[a] medical provider's mere possession or creation of medical records does not ipso facto establish that it had actual knowledge of a potential injury where the records do not evince that the medical staff, by its acts or omissions, inflicted any injury on plaintiff'" (Wally G. v New York City Health & Hosps. Corp. [Metro. Hosp.], 27 NY3d 672, 677 [2016], quoting Williams v Nassau County Med. Ctr., 6 NY3d 531, 537 [2006]). In Wally G., the Court of Appeals explained that, under this standard, it is not enough to negate prejudice to a medical provider from late service of notice that a medical expert might opine, "based on . . . the medical records, [that] the medical staff deviated from the standard of care" (27 NY3d at 677). Rather, the Court reiterated, "[T]he medical records must evince that the medical staff, by its acts or omissions, inflicted an[] injury on plaintiff' in order for the medical provider to have actual knowledge of the essential facts" (id., quoting Williams, 6 NY3d at 537).
Here, the claim against HHC is based on Bellevue's failure to diagnose the torn flexor tendon during the treatment of petitioner's lacerated thumb. Even if petitioner ultimately presents an expert affidavit opining that the records of petitioner's treatment, by themselves, reveal that the medical staff deviated from the standard of care by failing to take some step — such as performing an MRI — that, if taken, would have revealed the torn tendon, it is undisputed that the medical records themselves contain no indication of the torn tendon and, therefore, cannot be said to "evince" that any such deviation from the standard of care "inflicted any injury on [petitioner]" (Williams, 6 NY3d at 537).
Notwithstanding its acknowledgment that the record provides no basis for finding that HHC had actual knowledge of petitioner's claim within the notice period, the majority affirms the granting of the petition based on its view that petitioner made a favorable showing on the other two relevant factors, namely, a reasonable excuse for the delay in serving the notice and lack of prejudice to HHC. For the reasons discussed below, I disagree with the majority's view that petitioner demonstrated either a reasonable excuse for the full extent of his delay in serving a notice of claim or that HHC did not suffer substantial prejudice as a result of that delay.
I turn first to the issue of reasonable excuse. The proposed notice of claim that petitioner seeks leave to serve was verified by petitioner on May 6, 2015 — the same date on which he executed his supporting affidavit — and states in pertinent part (paragraph numbers omitted):
"The nature of the claim: Claim for medical malpractice in failing to properly treat a torn tendon of the right thumb and closing the claimant's wound without repairing the tendon.
"The time when, the place where, and the manner in which the claim arose:
"The claim arose on Dec. 12, 2014 at approx. 4:30 p.m. in the emergency room of Bellevue Hospital Center in NYC. The claim [*5]arose when the claimant was improperly treated by the doctor's [sic] and nurses of Bellevue Hospital Center. The claimant was improperly treated when the doctor who treated the claimant for a deep laceration to the right thumb neglected and failed to properly evaluate and treat the injury to claimant's thumb. The defendants further misdiagnosed the nature and extent of the injury, failed to properly suture the injury, failed to perform the appropriate diagnostic tests, made an incorrect clinical diagnosis[.] Failure to repair torn tendon of the right thumb."
To reiterate, the foregoing proposed notice of claim was prepared without the benefit of the relevant medical records. So were petitioner's supporting affidavit and the accompanying affirmation of counsel. In fact, both the proposed notice of claim and petitioner's affidavit were executed on May 6, 2015, 10 months before the petition was filed.
As is evident from the fact that the proposed notice of claim was drafted and verified before any medical records had been received, Bellevue's delay in sending those records to counsel does not constitute a reasonable excuse for waiting to seek leave to serve that notice of claim until March 4, 2016, nearly a year after Dr. Wertlieb advised petitioner of the torn tendon on March 19, 2015. As of the latter date, petitioner knew that the Bellevue emergency room had failed to diagnose or treat his torn tendon, and he knew that Bellevue had not used the diagnostic means (an MRI) that ultimately revealed the torn tendon. He had enough information to consult counsel about a potential claim, and counsel knew enough to prepare a notice of claim and an affidavit by petitioner requesting leave to file it after the expiration of the 90-day period. Indeed, had the petition been filed in or about March 2015, when petitioner learned of his torn tendon and retained counsel, or within a reasonable time thereafter, the delay in serving the notice of claim unquestionably would have been excusable. I see no excuse, however, for waiting 11 months from the hiring of counsel, and 10 months from the drafting and verification of the proposed notice of claim, to file the petition. The medical records will be needed, of course, to try the case, but were not needed to prepare a notice of claim.[FN3]
This Court has held that waiting to receive a report on the incident giving rise to a claim does not constitute a reasonable excuse for delay in serving a notice of claim where the claimant, even without the report, "had all the information necessary to file a . . . notice" (Alexander v City of New York, 2 AD3d 332 [1st Dept 2003]). In a case in which we rejected the claimant's lack of medical records as an excuse for the late filing of a notice of claim against HHC, we stated: "Although plaintiff asserts that the delay was attributable to the circumstance that she was awaiting hospital records, it is plain that those records were not necessary to the composition and filing of her claim" (Potts v City of N.Y. Health & Hosps. Corp., 270 AD2d 129, 129 [1st Dept 2000]). Here, as in Potts, "it is plain that [the hospital] records were not necessary to the composition and filing of [the] claim" (id.); see also Rechenberger v Nassau County Med. Ctr., 112 AD2d 150, 152 [2d Dept 1985] [in finding that there was no reasonable excuse for a nine-month delay in serving a notice of claim, the Court observed that the hospital records, for which the petitioners claimed they were waiting during part of the period of the delay, "were not [*6]necessary to preserve their malpractice claim"]).[FN4]
The two Second Department cases relied upon by the majority are not to the contrary. In Rojas, the Court found that it was reasonable for the petitioner to wait to serve a notice of claim until after the hospital finally provided her with the autopsy report for her stillborn fetus in response to her "multiple, prompt requests" (127 AD3d at 872). The Rojas petitioner had no basis on which to claim that the death of the fetus in utero was due to the hospital's neglect without knowing the cause of the fetal death. Similarly, in Cassidy v County of Nassau (84 AD2d 742 [2d Dept 1981]), a hysterectomy was performed on the plaintiff based on a misdiagnosis of a fibroid uterus, and the plaintiff did not learn that she actually had been pregnant with a viable fetus until the hospital finally sent her the record of her treatment (see id. at 743). In contrast to the claimants in Rojas and Cassidy, petitioner herein did not need the medical records to know that the hospital had failed to diagnose his torn tendon when he presented at the emergency room with a lacerated thumb.
Petitioner also failed to establish that HHC did not suffer substantial prejudice as a result of his waiting nearly a year after he learned of his torn flexor tendon — from March 19, 2015, to March 4, 2016 — to file his petition to serve a late notice of claim. At the outset, as the majority acknowledges, Supreme Court was mistaken in stating that HHC bore the initial burden to show that it had been prejudiced by the delay. Only last year, the Court of Appeals held that "the burden initially rests on the petitioner to show that the late notice will not substantially prejudice the public corporation" (Newcomb, 28 NY3d at 466). The majority asserts that petitioner met this burden, but I disagree.
The majority contends that petitioner carried his burden of negating prejudice by pointing to his requests to Bellevue for his treatment records beginning in April 2015, by attributing responsibility for his delay in filing the petition to HHC's delay of its own response to petitioner's requests for medical records, and by contending that the case will likely be tried on the basis of the medical records, not on the basis of "faded memories." In my view, none of this amounts to a "plausible argument" (Newcomb, 28 NY3d at 466) that HHC was not substantially prejudiced by petitioner's lengthy delay. First, petitioner's requests for his medical records are not relevant to the prejudice analysis because, as petitioner's counsel acknowledges, those [*7]requests were sent to Bellevue's records department. I see no basis in the record for the majority's implicit assumption that requests directed to the records department of a large urban hospital like Bellevue would have come to the attention of any person with responsibility for handling legal claims against the institution. Nor, for the reasons already discussed, do I see how responsibility for petitioner's lengthy delay in filing the petition can be shifted from petitioner to HHC based on HHC's delay in producing records that, as previously noted, were not needed to prepare the notice of claim. As to HHC's ability to defend this matter based on the medical records, as previously discussed, even the majority concedes that the records did not provide HHC with actual knowledge of the claim. Further, whatever memory of petitioner's treatment his Bellevue healthcare providers may have had in March 2015, when the torn tendon was diagnosed, was surely gone by March 2016, when this petition was finally filed nearly a year after the diagnosis and the hiring of petitioner's counsel. Since petitioner did not carry his initial burden of negating prejudice, that factor weighs against granting the petition, regardless of the strength of HHC's response.
For the foregoing reasons, I would reverse and deny the petition to serve a late notice of claim. As previously stated, I believe that the granting of the petition, notwithstanding petitioner's inexcusable delay of almost an entire a year in serving a notice of claim that had already been drafted for a known claim, was an abuse of discretion as a matter of law. Even if it could be said that the granting of the petition was not an abuse of discretion, I believe that this is one of the infrequent instances in which we should invoke our "sparingly exercised"
(Gecaj v Gjonaj, 149 AD3d 600, 612 [1st Dept 2017, Friedman, J.P., dissenting]) power to substitute our own discretion for that of Supreme Court. Accordingly, I respectfully dissent.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: FEBRUARY 1, 2018
CLERK



Footnotes

Footnote 1:While I recognize that it has no bearing on whether the petition should be granted, I find it notable that Dr. Goldstein, the private physician with whom petitioner first consulted after the treatment at Bellevue, did not initially order an MRI in response to petitioner's continuing inability to flex his thumb. Rather, Dr. Goldstein first referred petitioner to physical therapy. It was only when the stiffness of the thumb persisted after 12 weeks of physical therapy that Dr. Goldstein referred petitioner to the orthopedist who finally ordered an MRI. In this regard, it should be borne in mind that the deviation from the standard of care with which petitioner charges HHC is the failure of the Bellevue emergency room staff to order an MRI.

Footnote 2:Specifically, the applicable statute of limitations expired on March 11, 2016, a week after the petition was filed.

Footnote 3:The majority states that petitioner "needed to fully review the medical records to determine whether HHC failed to examine the soft tissues supporting the thumb." However, the above-quoted proposed notice of claim, which was prepared without benefit of the medical records, makes just that assertion, albeit in conclusory fashion. There is no requirement that a notice of claim be as detailed as a bill of particulars or that it be accompanied by an expert affidavit.

Footnote 4:The majority's assertion that petitioner, "unlike [the plaintiff in] Potts, . . . needed to fully review the medical records," does not change the fact that petitioner's counsel prepared a notice of claim and the supporting papers (based on the known failure to diagnose the torn tendon), and served and filed them, all without having received the records of petitioner's treatment at Bellevue. I do not understand how the majority can say that petitioner needed the Bellevue medical records to prepare a notice of claim when it is granting leave to serve a notice of claim that was, in fact, prepared and served without the benefit of those records. And, to reiterate, petitioner knew, without having received the medical records, that Bellevue had not taken an MRI of his injury. The majority's attempt to distinguish Alexander also fails, as the principle for which that decision stands — that waiting to receive documents unnecessary to the preparation of a notice of claim does not excuse delaying the service of the notice of claim — applies here, notwithstanding that the documents in question ultimately would be needed to adjudicate the case. Plainly, in requiring that a public corporation be given notice of a claim within 90 days, the legislature did not intend to require a claimant to support the notice with a fully fleshed-out prima facie case for imposing liability.