Matter of Primus v New York City Health & Hosps. Corp. (2025 NY Slip Op 50385(U))

[*1]

Matter of Primus v New York City Health & Hosps. Corp.

2025 NY Slip Op 50385(U)

Decided on March 27, 2025

Supreme Court, Kings County

Mallafre Melendez, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 27, 2025
Supreme Court, Kings County

In the Matter of the Claim of Shamika Primus as proposed Administrator 
 of the Estate of Barbara Williams, Shamika Primus, individually, Claimants,

against
New York City Health and Hospitals Corporation, 
 and Woodhull Medical Center, Respondents.

Index No. 517159/2024

Petitioner
Erica Moskowitz, Esq. (emoskowitz@lawscl.com)
Smith, Cheung & Lauterborn, P.C.
555 Broadhollow Road, Suite 305
Melville, NY 11747
631-827-6286
Respondents
Brandon J. Fernandes, Esq. (brandon.fernandes@mcblaw.com)
Martin Clearwater & Bell LLP
220 E 42nd St, Fl 13
New York, NY 10017
212-697-3122

Consuelo Mallafre Melendez, J.

Recitation, as required by CPLR §2219 [a], of the papers considered in the review:
NYSCEF #s: Seq. 1: 1 — 8, 12 — 14           Seq. 2:  18 — 19, 20 — 21
Petitioner Shamika Primus, individually and as proposed Administrator of the Estate of Barbara Williams ("Decedent"), moves by Order to Show Cause (Seq. No. 1) for an Order, [*2]pursuant to Gen. Mun. Law § 50-e (5), extending the petitioner's time to serve a notice of claim and/or deeming the notice of claim timely served nunc pro tunc.
Respondents New York City Health and Hospitals Corporation ("NYCHHC") and Woodhull Medical Center ("Woodhull") oppose the motion and cross move (Seq. No. 2) to dismiss this petition, pursuant to CPLR 3211 (a) (3), on the grounds that Petitioner lacks legal capacity.
The underlying medical malpractice and wrongful death claims against NYCHHC arise from Decedent's treatment and care at Woodhull on February 23, 2023, when Decedent presented to the emergency department with abdominal pain, fever, and diarrhea. After bloodwork, CT scans, and ultrasound, she was discharged the same evening with a primary diagnosis of gallstones and instructed to follow up with the general surgery clinic on March 9, 2023. The discharge instructions also referenced future Woodhull appointment dates in April. Decedent did not return to the surgery clinic on March 9.
Decedent subsequently sustained a fall on March 11, 2023 and was hospitalized at another facility until her death on April 17, 2023.
Petitioner alleges that Woodhull, through its agents and employees, failed to properly diagnose and treat Decedent for acute gangrenous cholecystitis.
Addressing the late notice of claim first (Seq. No. 1), a notice of claim against a public corporation is required within 90 days after the claim arises, pursuant to Gen. Mun Law § 50-e. Petitioner filed and served this petition and proposed notice of claim on June 21, 2024, well after the expiration of the 90-day period for the medical malpractice claims.
It is noted that for a wrongful death claim, the 90-day notice period does not begin to run until "the appointment of a representative of the decedent's estate" (see Gen. Mun Law § 50-e [1] [a]). Based on the submissions, Petitioner has not yet received letters of administration from Surrogate's Court. The notice of claim is therefore timely as to wrongful death, and that claim remains viable. The Court's determination on this petition concerns the underlying medical malpractice claims only.
"Courts have broad discretion to extend the 90-day time limitation 'in exceptional cases' upon consideration of all relevant factors, provided the statute of limitations of one year and 90 days has not already expired" (Jaime v City of New York, 41 NY3d 531, 540 [2024]). When the application is made after the statute of limitations has expired, the court no longer has discretion to deem the notice of claim timely under Gen. Mun Law § 50-e (5).
Generally, the limitations period is measured from the date of alleged medical malpractice, but it may run from the last date of treatment "when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint" (Gomez v Katz, 61 AD3d 108, 111 [2d Dept 2009], quoting Nykorchuck v Henriques, 78 NY2d 255, 258 [1991]; CPLR 214-a).
The Second Department has outlined three fundamental elements of continuous treatment: "(1) the patient 'continued to seek, and in fact obtained, an actual course of treatment from the defendant physician during the relevant period'; (2) the course of treatment was 'for the same conditions or complaints underlying the plaintiff's medical malpractice claim'; and (3) the treatment is 'continuous'" (Hillary v Gerstein, 178 AD3d 674, 678 [2d Dept 2019], citing Gomez). The last element defines the continuity of treatment "when further treatment is explicitly anticipated by both physician and patient," such as by a "scheduled appointment in the near future" (Gomez, at 112-113).
The second element regarding "the same conditions or complaints" is most relevant to this case. Although continuity of treatment may be established by anticipated follow-up appointments, it must be treatment for the same "relevant condition," illness, or symptoms, not "a mere continuing relation between physician and patient" (Cohen v Gold, 165 AD3d 879, 882 [2d Dept 2018]). The continuous treatment doctrine is not applicable to general health check-ups and treatment for unrelated conditions or symptoms (see Chambers v Mirkinson, 68 AD3d 702, 705-706 [2d Dept 2009]).
Because the Court has no discretion to permit a late notice of claim after the statute of limitations has expired, whether or not the "continuous treatment" doctrine applies is a threshold issue in this motion. This application to the Court to allow a late notice of claim was filed on June 21, 2024. If the limitations period ran one year and ninety days from February 23, 2023 to May 23, 2024, the application must be denied as untimely. However, Petitioner argues that the continuous treatment doctrine should apply based on Decedent's scheduled appointments with Woodhull providers on April 10, 2023 and/or April 17, 2023. This would extend "the time limited for the commencement of an action" to July 2024, and the Court would have discretion to decide the application pursuant to Gen. Mun. Law § 50-e (5).
In support of the continuous treatment argument, Petitioner submits medical records and a discharge summary from Woodhull. Those records state that when she was discharged from the emergency department on February 23, she was directed to schedule a follow-up with the general surgery clinic in two weeks (March 9, 2023) and with a primary care provider within three days (February 26, 2023). Her after-visit summary also indicated she had an upcoming appointment at Woodhull Podiatry on March 28, 2023, an appointment for "lab work" at the Woodhull Outpatient Lab on April 10, 2023, and an appointment with her primary care provider at the Woodhull Medicine Clinic on April 17, 2023. No records were submitted for the March 9, 2023 appointment and there is no mention of whether Decedent returned to the surgery clinic in March [FN1]
, but Petitioner states in an affidavit that Decedent would have returned for the April appointments if not for her hospitalization and death.
There is no information in the record as to who ordered the April 10 "lab work," and it is unclear whether it was connected to the labs taken on February 23 — potentially representing a course of treatment for her underlying condition and symptoms — or wholly unrelated to the condition at issue in this claim. There is no indication that the scheduled "revisit" with her primary care provider on April 17 was related to the same course of treatment or merely an ongoing physician/patient relationship "for aspects of the decedent's general medical care" (see Proano v Gutman, 211 AD3d 978, 982 [2d Dept 2022]). At best, the submissions demonstrate that there are potential issues of fact as to whether the "continuous treatment" doctrine applies, and the Court cannot make a determination on that issue without further discovery.
Nevertheless, only for purposes of reviewing this late notice of claim application, the court will assume that the continuous treatment doctrine is applicable in this matter and that the filing of the claim occurred within the limitations period.
"In determining whether to grant or deny leave to serve a late notice of claim, the court must consider in particular whether the municipality acquired actual knowledge of the essential [*3]facts constituting the claim within 90 days of the clam's accrual or within a reasonable time thereafter" (Jaime, at 540). The court also considers other relevant facts and circumstances, particularly whether "the delay would substantially prejudice the municipality or public corporation in its defense" and whether the petitioner "demonstrated a reasonable excuse for the failure to serve a timely notice of claim" (Ibrahim v New York City Tr. Auth., 202 AD3d 786, 787 [2d Dept 2022]).
"The presence or absence of any one of these factors is not dispositive" (Balbuenas v New York City Health & Hosps. Corp., 209 AD3d 642, 644 [2d Dept 2022], quoting Rodriguez v Westchester Med. Ctr. [WMC], 196 AD3d 659, 660 [2d Dept 2021]). However, "courts are to place a great weight" on the factor of actual knowledge (Jaime, at 540, quoting Beary v City of Rye, 44 NY2d 398 [1978]).
Petitioner argues that NYCHHC had actual knowledge of the facts underlying the claim based on their February 23 hospital records. "While the contents of records in the municipality's possession may sometimes be sufficient to demonstrate that a municipality acquired actual knowledge of the essential facts constituting the claim within a reasonable time, 'mere possession or creation of records does not ipso facto establish actual knowledge'" (id., at 545, quoting Wally G. ex rel. Yoselin T. v New York City Health and Hosps. Corp., 27 NY3d 672, 677 [2016]). In the case of a medical malpractice claim, "[t]he medical records must do more than 'suggest' that an injury occurred as a result of malpractice . . . the medical records must evince that the medical staff, by its acts or omissions, inflicted an injury on plaintiff" (Santos v Westchester Medical Center, 216 AD3d 1121, 1122 [2d Dept 2023], quoting Wally G., at 677).
Petitioner submits an expert affirmation from Frank Suppa, M.D., in which the physician opines that the medical records clearly suggest a departure from the standard of care. He opines that the CT report suspicious for gangrenous cholecystitis "warranted additional imaging and/or admission to the hospital for potential surgical removal of her gallbladder." He later states that the standard of care required a "CT scan or HIDA scan" based on her symptoms, and upon the suspicious findings in her CT scan, she required "potential surgery, additional imaging, and/or IV antibiotic therapies." Petitioner's expert does not address the scheduled March 9, 2023 follow-up appointment at the surgical clinic. He states that she was told to return in April for lab work "to follow up on the abnormal lab values that were reported on February 23, 2023," but this statement is speculative and not supported by the record.
The Court finds that these submissions are not sufficient to demonstrate actual knowledge of the underlying facts of Petitioner's claim. Contrary to Petitioner's argument, there is nothing in the Woodhull record which demonstrates an "injury attributable to malpractice" or that the "resulting injuries are plainly evident upon a review of the medical records." There is no showing that the institution had any records in their possession suggesting the injuries that were proximately caused by her treatment on February 23, and thus there is no showing they had actual knowledge of the facts underlying a potential malpractice claim.
The medical records submitted show that Decedent underwent blood tests, an ultrasound, and CT scans before being discharged. Her chart noted that "HIDA scan for further workup" was recommended, she was evaluated by the surgery team, and she was directed to follow up with the general surgery clinic in two weeks on March 9, 2023. Further, the Petitioner's expert sets forth a standard of care requiring "potential" surgery or further imaging (HIDA scan), but he does not address the surgical follow-up date and fails to articulate the appropriate timeframe for additional imaging or surgical intervention.
The Court may also consider whether Petitioner offered a reasonable excuse for their failure to serve a timely notice of claim, supported by competent evidence (see generally Balbuenas, at 646-647 [2d Dept 2022]; Williams v Jamaica Hosp. Medical Center, 124 AD3d 636, 638 [2d Dept 2015]). "While the statute does not explicitly provide for the consideration of that factor, the statute is non-exhaustive and this factor has firmly taken root in the case law" (Jaime, at 541). However, the court may not merely infer a reasonable excuse in the "absence of any relevant evidence" in the record (id., at 545).
Here, Petitioner provided no excuse for the delay in the attorney affirmation, personal affidavit of a next of kin, or any other evidentiary submissions. "The absence of a reasonable excuse is not in and of itself fatal to the petition where . . . there was actual notice and the absence of prejudice" (Brooks v County of Suffolk, 177 AD3d 969, 972 [2d Dept 2019]). In this case, the petitioner did not provide any excuse for the delay and did not adequately demonstrate actual notice based on the medical records and physician affirmation.
On the substantial prejudice factor, Petitioner argues that the delay in filing the notice of claim will not prejudice respondent NYCHHC, because they are now in possession of "all the same resources" and medical records as the petitioner, and they would not be hindered in maintaining a defense by reviewing those records, interviewing witnesses, and consulting with experts as in any other medical malpractice action. This meets their prima facie burden of presenting at least "some evidence or plausible argument that supports a finding of no substantial prejudice" (Newcomb v Middle County Cent. School Dist., 28 NY3d 455, 466 [2016]). In opposition, the respondents did not make any particularized showing that they would be substantially prejudiced by the late notice of claim.
Notwithstanding, substantial prejudice is only one piece of the court's consideration, and it is generally not sufficient as the only factor weighing in the petitioner's favor. Without a showing of actual knowledge or reasonable excuse, the absence of prejudice alone does not warrant an extension of time (see Balbuenas, at 647). Even assuming the Court has discretion to decide this application, the petitioner has not shown actual knowledge, and a reasonable excuse has not been offered. Accordingly, the petition is denied as to the medical malpractice claims, as it did not meet the elements required to deem a notice of claim timely, nunc pro tunc.
Turning to the cross motion (Seq. No. 2) to dismiss this petition pursuant CPLR 3211 (a) (3), the respondents argue that the petitioner is merely a "proposed administrator" and lacks legal capacity to bring this petition and Order to Show Cause. It is noted that the Supreme Court decision cited by the respondents relates to capacity to bring an action, which is not on point for this matter. A "proposed administrator" who has not been appointed by Surrogate's Court has no legal capacity to maintain an action by Summons and Complaint, but the same requirements do not apply to filing a notice of claim. The primary purpose of a notice of claim is to give notice to the public corporation of the underlying facts and nature of the claim. It is long held that this notice may be filed on behalf of the actual claimant or their estate, even if the filing party does not yet have legal authority as a guardian or administrator (see Winbush v City of Mount Vernon, 306 NY 327 [1954]; Figueroa v City of New York, 279 AD 771, 771 [2d Dept 1951]). The action itself may be later adopted by someone "subsequently legally authorized to act on the claimant's behalf" (Figueroa, at 771). While respondents' request is moot as to the medical malpractice claims for reasons discussed above, the wrongful death claims remain viable as the notice of claim is timely as to that cause of action. In conclusion, the cross motion seeking to dismiss for [*4]lack of capacity is denied as moot with regards to the medical malpractice claims and denied as inapplicable to the wrongful death claim.
Accordingly, it is hereby:
ORDERED that the Petition and Order to Show Cause (Seq. No. 1) seeking an Order, pursuant to Gen. Mun. Law § 50-e (5), extending the time to serve a notice of claim and/or deeming the notice of claim timely served nunc pro tunc, as to the medical malpractice and non-wrongful death claims, is DENIED; and it is further
ORDERED that NYCHHC's cross motion (Seq. No. 2) to dismiss the petition for lack of capacity, pursuant to CPLR 3211 (a) (3), is DENIED.
This constitutes the decision and order of this Court.
ENTER.
Hon. Consuelo Mallafre Melendez
J.S.C.

Footnotes

Footnote 1:This petition would still be time-barred if the limitations period was measured from March 9, 2023.