# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 15
In the Matter of Luis Jaime,
        Respondent,
     v.
City of New York,
        Appellant.
-------------------------
No. 16
In the Matter of Adan Orozco,
        Respondent,
     v.
City of New York,
        Appellant.

Case No. 15:

Lorenzo Di Silvio, for appellant.

Case No. 16:

Elina Druker, for appellant.

TROUTMAN, J.:

The issue here is whether the trial courts abused their discretion in granting petitioners leave to serve a late notice of claim against respondent City of New York (City) pursuant to General Municipal Law § 50-e (5). We hold that the courts abused their

- 1 -

discretion in determining that the alleged participation of the City's employees in an intentional tort, and the City's alleged creation or possession of records related to the events underlying the claims, provided the City with actual knowledge of the essential facts constituting the claims. We therefore reverse the orders of the Appellate Division.

I.

*Matter of Orozco v City of New York*

On July 23, 2020, petitioner Adan Orozco served a notice of claim alleging that, on July 26, 2018, officials of the New York City Police Department (NYPD) and the District Attorney's Office[1] obtained a warrant for his arrest, absent probable cause, by submitting to the issuing magistrate "false" and "fabricated" evidence of an unspecified nature. The officials allegedly arrested Orozco on the fraudulent warrant at a specified address on August 13, 2018 and interrogated him in an attempt to coerce him into implicating the "true criminal targets" of the investigation. Orozco alleged that he was then maliciously prosecuted with the same coercive purpose based on "patently false" and "fabricat[ed]" evidence of an unspecified nature that the officials provided to the prosecutor. Orozco allegedly was "wrongfully detained" for five months until December 24, 2018, when the criminal proceedings terminated in his favor. He sought to assert claims of, inter alia, false arrest and malicious prosecution.

---

[1] Orozco specifically named the Special Narcotics Prosecutor of the City of New York, who is an assistant district attorney on the staff of the District Attorney's Office of one of the City's five boroughs (*see* Judiciary Law § 177–c; *People v Viviani*, 36 NY3d 564, 579 [2021]), as well as five officials who work under the auspices of the Office of the Special Narcotics Prosecutor.

Orozco filed a petition verified by his attorney for leave to serve a late notice of claim, asserting that the actual knowledge of the police officers who participated in the arrest and prosecution may be imputed to the City, and that the City also acquired actual knowledge through its alleged possession of records that its officers were required to create during the course of the investigation and prosecution. Orozco further asserted that, because the City had actual knowledge, it would not be substantially prejudiced by the late filing. Orozco also asserted that his need to defend against the criminal charges constituted a reasonable excuse for his failure to serve a timely notice of claim, as did his limited English, his California residency, and the effects of the COVID-19 pandemic. The proposed notice of claim was attached to the petition, but Orozco did not submit an affidavit or any other evidence in support of his petition.

In opposition, the City argued that Orozco failed to meet his initial burden of proof with respect to actual knowledge, substantial prejudice, or reasonable excuse. The City argued that knowledge acquired by a police officer during the course of an investigation should not be imputed to the City, and that the mere existence of records is insufficient to provide the City with actual knowledge. Furthermore, the City argued that Orozco failed to meet his initial burden to show lack of prejudice, and that he had no reasonable excuse for the late filing because his false arrest and malicious prosecution claims did not accrue until he was released from detention and the prosecution terminated.

Supreme Court granted the petition in relevant part,[2] and the Appellate Division affirmed (*Matter of Orozco v City of New York*, 200 AD3d 559 [1st Dept 2021]), reasoning that the City acquired actual knowledge due to "the fact" that its officers "participated and were directly involved in" the conduct giving rise to the claims and "are in possession of records and documents relating to the incident" (*id.* at 560). The court concluded that the City's "actual knowledge may be presumed by the very nature of the action and the allegations" (*id.* at 562). In light of the City's actual knowledge, Orozco made an initial showing that the City would not be prejudiced, and the City made no particularized showing of prejudice in opposition (*see id.* at 563). Orozco's excuse, though "debatable," was "sufficient under the circumstances" (*id.*). One Justice dissented on the ground that Orozco had submitted no evidence in support of his petition (*see id.* at 564-566).

We granted the City leave to appeal (39 NY3d 903 [2022]).

*Matter of Jaime v City of New York*

On May 6, 2021, petitioner Luis Jaime filed a petition attaching five proposed notices of claim, each relating to a different date between June 21, 2019, and October 8,

---

[2] Supreme Court granted the petition only with respect to the false arrest and malicious prosecution claims. Those claims were timely because they accrued on December 24, 2018, the date Orozco was released from jail (*see Britt v Legal Aid Socy.*, 95 NY2d 443, 448 [2000]; *McQueen v City of New York*, 209 AD3d 469, 470 [1st Dept 2022]), and thus the limitations period of one year and 90 days prescribed in General Municipal Law § 50-i (1) had not expired before March 20, 2020, the date the governor issued an executive order containing a provision that tolled all limitations periods due to the COVID-19 pandemic (*see* 9 NYCRR 8.202.8). That provision that remained in effect in July 2020 when Orozco filed his late notice of claim (*see* 9 NYCRR 8.202.72 [lifting the toll as of November 4, 2020]). Supreme Court denied the petition with respect to the remaining claims, which were time-barred because they had earlier accrual dates.

2020, while Jaime was detained at Riker's Island. Although each notice alleged a separate incident, the allegations in the notices used nearly identical language with little variation. In the first notice, Jaime alleged that, on or about June 21, 2019, at approximately 3:00 p.m., he was attacked by correction officers, including five officers identified by title and surname, "and/or inmates," who struck him about the body, head, and face. Prior to the attack, he allegedly informed Department of Correction (DOC) employees that he was in "imminent danger" of attack by "officers and/or other inmates," and that his safety would be in jeopardy if not placed in protective custody, but the employees allegedly responded with "deliberate indifference" and were not at their posts at the time of attack. Jaime further alleged that, in the aftermath of the attack, he sought and received medical attention in the infirmary for injuries, including a fractured arm. The allegations in the remaining notices differ only in the dates and times and the injuries sustained, except for the fourth notice, which also names a different set of officers and alleges a different manner of attack.

Jaime, who was represented by the same attorney as Orozco, raised essentially the same arguments as Orozco, except that Jaime's claimed reasonable excuse for the late filing was his continued detention, difficulty securing legal representation while in jail, and the effects of the COVID-19 pandemic. Like Orozco, Jaime attached his proposed notices of claim to his petition but did not submit an affidavit or other evidence with his petition.

In opposition, the City argued that Jaime failed to prove that the City had actual knowledge because he submitted no evidence and, moreover, the involvement of its employees does not establish that the City had actual knowledge. The City further argued that, because Jaime failed to prove actual knowledge, he failed to meet his initial burden to

show a lack of prejudice. The City did not address whether Jaime had a reasonable excuse for his delay.

Jaime thereafter submitted documents, including copies of grievances that he filed while jailed at Riker's Island, but none of those grievances or any of the other documents relate to the incidents alleged in the notices of claim. The significance of the documents to Jaime's claims is unclear, and he has not provided an explanation.

Supreme Court granted the petition, and the Appellate Division affirmed (*Matter of Jaime v City of New York*, 205 AD3d 544 [1st Dept 2022]), concluding that the City had actual knowledge due to "the fact that the officers who allegedly assaulted petitioner or witnessed the incidents would, as respondent's employees, have had immediate knowledge of the events giving rise to this dispute" (*id.*, citing *Orozco*, 200 AD3d at 560).

We granted the City leave to appeal (39 NY3d 903 [2022]).

## II.

"[W]hen the State of New York waived its sovereign immunity in 1929, its subdivisions, including the City, also lost their protection from suit" (*Campbell v City of New York*, 4 NY3d 200, 205 [2005]). "In recognition of this loss of sovereign immunity, the legislature has created certain protections for municipalities in General Municipal Law article 4 that do not apply to private tort defendants" (*Colon v Martin*, 35 NY3d 75, 82 [2020, Fahey, J., concurring], citing *Bender v New York City Health & Hosps. Corp.*, 38 NY2d 662, 667 [1976]). As part of these protections, a litigant generally may not maintain a tort claim against a municipality unless the litigant served upon the municipality a notice of claim within 90 days of the claim's accrual (*see* General Municipal Law [GML] §§ 50-

i [1]; 50-e [1]). The purpose of the notice of claim is to alert the municipality to the existence of the claim so that it can promptly investigate and preserve any relevant evidence before the passage of time renders such evidence unavailable or lessens its probative value (*see Matter of Beary v City of Rye*, 44 NY2d 398, 412 [1978]; Siegel & Connors, NY Prac § 32 at 43 [6th ed 2018]). In furtherance of that purpose, the service of a notice of claim triggers the municipality's right to compel oral and physical examinations of a claimant before an action is commenced—a unique discovery tool unavailable to the typical tort defendant (*see* GML § 50-h; *Colon*, 35 NY3d at 83).

A claimant's failure to file a timely notice of claim is not necessarily fatal. Courts have broad discretion to extend the 90-day time limitation "in exceptional cases" upon consideration of all relevant factors, provided the statute of limitations of one year and 90 days has not already expired (*Beary*, 44 NY2d at 412; *see* GML § 50-e [5]). In determining whether to grant or deny leave to serve a late notice of claim, the court must consider "in particular" whether the municipality "acquired actual knowledge of the essential facts constituting the claim within [90 days of the claim's accrual] or within a reasonable time thereafter" (GML § 50-e [5]; *see Matter of Newcomb v Middle Country Cent. Sch. Dist.*, 28 NY3d 455, 461 [2016]). Courts are to place "great weight" on this factor (*Beary*, 44 NY2d at 412), which the party seeking leave has the burden of establishing through the submission of nonspeculative evidence (*see Washington v City of New York*, 72 NY2d 881, 883 [1988]; *Dalton v Akron Cent. Schools*, 107 AD3d 1517, 1519 [4th Dept 2013], *affd* 22 NY3d 1000 [2013]).

Aside from nonexclusive references to a municipality's "attorney or its insurance carrier," the statute does not designate precisely whose knowledge is imputable to the municipality (GML § 50-e [5]). But courts should not assume that every municipal employee's knowledge of essential facts is necessarily imputed to the municipality. Allowing imputation in every case would undermine the purpose of the notice of claim requirement because not every employee's knowledge will necessarily afford the municipality an opportunity to commence a prompt investigation. Generally, knowledge of essential facts as to time and place by an actor in a position to investigate will suffice (*see Rosenbaum v City of New York*, 8 NY3d 1, 11 [2006]). Whether a particular employee's actual knowledge is imputable to the municipality involves a fact-specific inquiry committed to the sound discretion of the trial court, whose determination should not be disturbed on appeal so long as it is supported by facts in the record (*see Dalton*, 107 AD3d at 1518-1519).

While the contents of records in the municipality's possession may sometimes be sufficient to demonstrate that a municipality acquired actual knowledge of the essential facts constituting the claim within a reasonable time, "mere possession or creation of . . . records does not ipso facto establish . . . 'actual knowledge' " (*Wally G. v New York City Health & Hosps. Corp. [Metro. Hosp.]*, 27 NY3d 672, 677 [2016] ["medical records must 'evince that the medical staff, by its acts or omissions, inflicted an injury on plaintiff' in order for the medical provider to have actual knowledge of the essential facts" (internal brackets omitted)]; *see Parker v City of New York*, 206 AD3d 936, 938 [2d Dept 2022] ["Unsubstantiated and conclusory allegations that the municipality acquired timely actual

knowledge of the essential facts constituting the claim through the contents of reports and other documentation are insufficient"]).

In addition to actual knowledge, the courts must consider "all other relevant facts and circumstances" (GML § 50-e [5]), and "the presence or absence of any one factor is not determinative" (*Matter of Morris v County of Suffolk*, 88 AD2d 956, 957 [2d Dept 1982], *affd* 58 NY2d 767 [1982]). One oft-cited factor is whether the municipality is substantially prejudiced by service of the late notice of claim (*see* GML § 50-e [5]). Under the burden-shifting framework established in *Newcomb*, the petitioner has the initial burden to present "some evidence or plausible argument that supports a finding of no substantial prejudice" (28 NY3d at 466) and, if such a showing is made, the burden shifts to the municipality "to rebut that showing with particularized evidence" (*id.* at 467).

Courts also commonly consider whether the petitioner had a reasonable excuse for failing to serve a timely notice of claim. While the statute does not explicitly provide for the consideration of that factor, the statute is nonexhaustive and this factor has firmly taken root in the case law (*see e.g. id.* at 463; *Matter of Simpson v City of New York*, 222 AD3d 986, 986 [2d Dept 2023]; *Arnold v Town of Camillus*, 222 AD3d 1372, 1376 [4th Dept 2023]; *Matter of Benavides v New York City Health & Hosps. Corp.*, 220 AD3d 458, 458 [1st Dept 2023]; *Matter of Doe v Elmira City Sch. Dist.*, 209 AD3d 1187, 1187 [3d Dept 2022]; *Dalton*, 107 AD3d at 1518).

Where, as here, there is no action already pending, a claimant must seek leave to serve a late notice of claim by bringing a special proceeding against the municipality pursuant to CPLR article 4 (*see Matter of Jordan v City of New York*, 38 AD3d 336, 338 n

2 [1st Dept 2007]; *Matter of Guarneri v Town of Oyster Bay*, 224 AD2d 695, 695 [2d Dept 1996]; NY Prac § 32 at 47 & n 51). The burden of production is on the petitioner in a special proceeding (*see* CPLR 409 [a]), and the court applies settled summary judgment standards (*see Matter of Bank of N.Y. Mellon*, 202 AD3d 465, 467 [1st Dept 2022]), under which the party seeking relief must establish entitlement to judgment as a matter of law by submitting admissible evidence (*see Friends of Animals v Associated Fur Mfrs.*, 46 NY2d 1065, 1067 [1979]). That said, if papers "necessary to consideration of the questions involved" are in the possession of the municipality, the petitioner may demand the papers produced by serving a notice with the petition (CPLR 409 [a]).

Ultimately, while the decision to grant or deny leave to file a late notice of claim is committed to the court's "broad discretion," its determinations "must be supported by record evidence" (*Newcomb*, 28 NY3d at 465).

### III.

### *Matter of Orozco v City of New York*

Orozco's allegation that NYPD officers and the District Attorney's Office participated in his arrest and prosecution does not establish that the City acquired actual knowledge of the essential facts constituting his false arrest and malicious prosecution claims (*see* GML § 50-e [5]). As emphasized by the dissenting Justice at the Appellate Division, Orozco offered no evidence establishing the City's actual knowledge (*see Orozco*, 200 AD3d at 564-565 [Moulton, J., dissenting]). Although a " 'verified pleading' may be utilized as an affidavit whenever the latter is required" (CPLR 105 [u]; *see Sanchez v National R.R. Passenger Corp.*, 21 NY3d 890, 891 [2013]), the verified pleading has

evidentiary value only if the verifier has personal knowledge of the facts (*see Juseinoski v Board of Educ. of City of N.Y.*, 15 AD3d 353, 356 [2d Dept 2005] ["a pleading verified by an attorney pursuant to CPLR 3020 (d) (3), and not by someone with personal knowledge of the facts, is insufficient to establish (a claim's) merits"]; *see also Zuckerman v City of New York*, 49 NY2d 557, 563 [1980] ["the bare affirmation of (an) attorney who demonstrated no personal knowledge of the manner in which the accident occurred . . . is without evidentiary value and thus unavailing"]).

Without any competent evidence, the trial court was unable to undertake a fact-specific inquiry into whether the City acquired actual knowledge through any of its employees.[3] If the alleged fabrication were the work of a single rogue officer in a nonsupervisory role, for example, it is doubtful that the officer would have referred his own illicit conduct for an investigation. The evidence of actual knowledge need not be exhaustive, provided the petitioner meets the applicable evidentiary burden. Orozco might have submitted his own affidavit, copies of papers that he filed in the underlying criminal proceeding, decisions of the criminal court, or other relevant evidence. However, Orozco's mere allegation that NYPD officers participated in his arrest and prosecution does not constitute facts or evidence, and thus does not satisfy his burden of establishing that the City acquired actual knowledge of the essential facts constituting the claims.

---

[3] Orozco cannot rely on the actual knowledge of the employees of the District Attorney's Office because the City and the District Attorney's Office "are separate entities" (*Brown v City of New York*, 60 NY2d 897, 898 [1983]).

If we were to hold that a municipal employee's alleged participation in an intentional tort necessarily provided the municipality with actual knowledge, our holding would create a de facto exemption to the notice of claim requirement for claims of battery, false arrest, and malicious prosecution, among others. This the legislature plainly did not intend because General Municipal Law § 50-e (8) identifies the kinds of tort claims that are categorically exempt from the notice of claim requirements, e.g., those arising out of sex crimes against children (*see* GML § 50-e [8] [b]). Claims of false arrest and malicious prosecution are not exempt from the notice of claim requirement.

Furthermore, the alleged existence of records does not suffice to establish actual knowledge (*see Washington*, 72 NY2d at 883). Orozco's failure to submit evidence of the contents of the alleged records is fatal to his argument that the City acquired actual knowledge from the existence of such records. There is no suggestion that Orozco's attorney attempted to obtain the records and was refused, something that easily could have been included in an attorney affirmation. Nor did Orozco seek to compel the City to produce any papers necessary to the determination of his petition (*see* CPLR 409 [a]).

Insofar as Orozco argued that the City would not be substantially prejudiced by the late filing because it acquired timely actual knowledge, Orozco's failure to establish actual knowledge is fatal. Orozco's further argument—that the City would not be substantially prejudiced because it will have to expend resources to defend against his 42 USC § 1983 claims—misapprehends the purpose served by the notice of claim requirement. As discussed above, the purpose is to afford the municipality the opportunity to investigate the claims and preserve evidence (*see Beary*, 44 NY2d at 412), not simply to shield

municipalities from litigation costs.  Moreover, this argument understates the advantage of facing only a section 1983 claim that can be defended on qualified immunity grounds (*see Savino v City of New York*, 331 F3d 63, 66 [2d Cir 2003]), as opposed to facing that claim plus additional state law claims.

Orozco also failed to provide a reasonable excuse for his late notice. The need to defend against the criminal charges does not provide him with a reasonable excuse because Orozco's  false arrest and malicious prosecution claims did not accrue until the date he was released from custody (*see* n 2, *supra*), at which time there were no longer any criminal charges against him. Nor does the COVID-19 pandemic provide a reasonable excuse because Orozco's claims were to expire only days after the pandemic struck New York State (*see id.*). If anything, the pandemic benefited him by giving rise to the executive orders that tolled his claims. Orozco's remaining excuses were offered only in conclusory and perfunctory fashion (*see Ward v New York City Health & Hosps. Corp.*, 82 AD3d 471, 472 [1st Dept 2011]; *Matter of Oliver v City of New York*, 76 AD3d 1017, 1018 [2d Dept 2010]).

Because the court's determination was not supported by the record, the court abused its discretion in granting Orozco's petition (*see Newcomb*, 28 NY3d at 460).

### Matter of Jaime v City of New York

Supreme Court likewise abused its discretion in granting Jaime's petition. Unlike Orozco, Jaime appears to have submitted some evidence—copies of grievances that he filed with DOC while detained at Riker's Island. However, those grievances serve only to undermine his claim that the City had actual knowledge. The grievances in the record

demonstrate that Jaime was familiar with the grievance procedure and repeatedly availed himself of it, and also that he knew how to obtain copies of the grievances he filed. Yet the absence of any grievances bearing on the incidents described in the late notices of claim suggests that he never filed such a grievance. If such a grievance were in the record, surely it would comprise at least some evidence that the City had actual knowledge.

The City conceded at oral argument that an incarcerated person might not file a grievance concerning a violent attack by a correction officer for fear of reprisal, a fear that may constitute a reasonable excuse for late service of a notice of claim. It would, however, be entirely speculative for us to consider that possibility here given the absence of any relevant evidence. Were Jaime in fact operating under such a fear, he could have submitted an affidavit attesting to the fact. That affidavit would have constituted evidence supporting an arguably reasonable excuse, which might provide at least some support for a court's discretionary determination to allow late service.

Neither the allegation that Jaime sustained injuries in the attacks for which he sought medical attention in the infirmary, nor the allegation that the DOC created or maintained records relating to those injuries, establishes that the City acquired actual knowledge of the essential facts constituting the claim (*see Wally G.*, 27 NY3d at 677). While medical personnel in the infirmary may be expected to report injuries of inmates that were allegedly caused by correction officers or other employees, Jaime provides no evidence, even in the form of an affidavit, that he told the infirmary personnel his injuries were caused by correction officers. Absent such a linkage, there would be no reason for the infirmary

personnel to file any report. Moreover, as with Orozco, there is no indication that Jaime unsuccessfully sought the production of these alleged records and documents from the City.

Jaime thus failed to meet his burden of establishing actual knowledge and, for the same reasons as Orozco, failed to meet his initial burden on the substantial prejudice factor. Because the court's determination was not supported by the record, the court abused its discretion in granting Jaime's petition (*see Newcomb*, 28 NY3d at 460).

<u>IV.</u>

The trial courts' abuse of discretion requires reversal. Although remittal to those courts is generally the preferred disposition given the purely discretionary nature of a determination whether to grant an extension to file a notice of claim (*see Newcomb*, 28 NY3d at 465, 468), we conclude that remittal would serve no purpose in these cases. Orozco failed to establish any of the factors on which he relied and, although Jaime did offer an unsubstantiated reasonable excuse to which the City preserved no challenge (*see Jaime*, 205 AD3d at 544-545), under the particular facts of this case, Jaime's excuse, even if credited, would not by itself support a discretionary extension of time in which to serve a late notice of claim.

Accordingly, in each matter, the order of the Appellate Division should be reversed, with costs, and the petition to file a late notice of claim denied.

RIVERA, J. (dissenting in part and concurring in part):

The common question presented in these joint appeals is whether the Appellate Division abused its discretion in affirming Supreme Court's grant of the respective petitions to file a late notice of claim under General Municipal Law 50-e (5). In each case,

- 1 -

the Appellate Division concluded that the immediate knowledge of the public employees who perpetrated the allegedly tortious acts is automatically imputed to the municipality, thus establishing its actual knowledge of the essential facts constituting the claim within a reasonable time after the claim accrued (*Matter of Orozco v City of New York*, 200 AD3d 559, 560-562 [1st Dept 2021]; *Matter of Jaime v City of New York*, 205 AD3d 522, 544 [1st Dept 2022]). As the majority states, "[w]hether a particular employee's actual knowledge is imputable to the municipality involves a fact-specific inquiry committed to the sound discretion of the trial court" (majority op at 8). Therefore, like the majority, I reject the Appellate Division's per se rule because it supplants the court's discretion.

The question remains whether application of the majority's rule warrants reversal in either or both appeals. To the extent the Court's analysis here may be understood as mandating denial of a late notice petition where the record lacks evidence to suggest the municipality had "actual knowledge of the essential facts constituting the claim," such a reading is contrary to the plain statutory text and our case law, which make clear that no factor is dispositive. However, I concur in the majority's conclusion that it was an abuse of discretion to grant the petition in *Orozco* for the reasons stated. But because the petition in *Jaime* provides sufficient support for actual knowledge, I would affirm the Appellate Division as to that appeal.

* * *

Section 50-e (5) of the General Municipal Law (GML) authorizes a court, "in its discretion, [to] extend the time to serve a notice of claim" upon a prospective municipal defendant of a tort action. The court shall consider whether the municipality "acquired

actual knowledge of the essential facts constituting the claim within [90 days of accrual] or within a reasonable time thereafter" and "shall also consider all other relevant facts and circumstances, including "a nonexhaustive list of factors that the court should weigh," such as whether service of a late notice "substantially prejudiced the public corporation in maintaining its defense on the merits" (*Williams v Nassau County Med. Ctr.*, 6 NY3d 531, 535 n 1, 539 [2006], quoting GML § 50-e [5]). "Since the statutory notice requirement is not intended to operate as a device to frustrate the rights of individuals with legitimate claims, and because of its remedial nature, it should be liberally construed" (*Ramos v New York City Hous. Auth.*, 162 AD3d 884, 885 [2d Dept 2018], citing *Matter of Porcaro v City of New York*, 20 AD3d 357, 358 [1st Dept 2005] [internal quotation marks omitted]; *see also People v Brown*, 25 NY3d 247, 251 [2015] ["remedial statutes . . . should be interpreted broadly to accomplish their goals"]). "Because the decision to grant or deny an application for an extension under section 50-e (5) is 'purely a discretionary one', our review is limited to whether the Appellate Division abused its discretion in making such a determination" (*Wally G. v New York City Health & Hosp. Corp. [Metro. Hosp.]*, 27 NY3d 672, 675 [2016] [internal citations omitted]). A court abuses its discretion under GML 50-e if it acts beyond "the perimeters of reason" (*Williams*, 6 NY3d at 539, quoting *Matter of Murray v City of New York*, 30 NY2d 113, 119 [1972]).

Petitioner Jaime alleged that during his incarceration at Rikers Island he warned numerous Department of Corrections officers that he was "in imminent danger of attack" by various other officers and inmates and that his safety would be "in serious jeopardy" unless he were placed in protective custody. He further alleged that his requests were

ignored and he was subsequently attacked by several identified officers and unidentified inmates five times between June 2019 and October 2020. The petition included copies of several administrative grievances he filed while incarcerated, although only one referred to an "altercation." Crucially, he alleged that after each of the attacks, he received medical attention at the North Infirmary Command (NIC). The NIC is based on Rikers and provides medical services to inmates. Petitioner's injuries surely would have been documented and should have been investigated, especially given his advance warning of impending danger, if for no other reason than that a failure to do so would expose Rikers officials to liability. A prisoner who goes to the infirmary with significant injuries from a physical assault should prompt an inference of negligence because corrections officers have a responsibility to keep prisoners safe (*Sanchez v State of New York*, 99 NY2d 247, 252 [2002] ["Having assumed physical custody of inmates, who cannot protect and defend themselves in the same way as those at liberty can, the State owes a duty of care to safeguard inmates, even from (reasonably foreseeable) attacks by fellow inmates"]).

The majority misinterprets *Wally G.* (27 NY3d 672), which did not foreclose the possibility that an allegation that the City possesses records documenting a petitioner's injuries could "establish[] that the City acquired actual knowledge of the essential facts constituting the claim" (majority op at 14). That case involved negligence and medical malpractice claims against government-employed medical professionals for birth-related injuries. The Court held that expert affidavits offered by the petitioner simply posited that the City employees "could have engaged in alternative courses of treatment" that would have produced different results, and that "mere assertions that a different course of

treatment" could have been followed do not address whether the City had actual knowledge of the essential facts necessary to properly defend itself (27 NY3d at 676-677). In other words, the records in the City's possession would not have established that City-employed medical providers caused any injury to the petitioner.

But the prison infirmary records here are plainly distinguishable because an injury to an inmate in and of itself places prison officials on notice of a potential tort claim. Indeed, Rikers has a particularly appalling record of inmate injuries. Use of force rates have doubled since the federal monitor began overseeing conditions on Rikers Island, and incidents resulting in "serious injuries have tripled since 2016" (Sam McCann, *Amid Another Report of Rampant Abuse on Rikers, It's Time to Hold City Jails Accountable*, Vera Institute [Apr. 27, 2023], available at https://www.vera.org/news/amid-another-report-of-rampant-abuse-on-rikers-its-time-to-hold-city-jails-accountable [accessed March 2, 2024]; *see also* Serious Injury Report in NYC Jails, New York City Board of Correction [January 2019]). The numbers are difficult to verify, however, because of a "systematic lack of accountability" for corrections officers, who have been shown to cover up incidents of violence (*id.*, citing Joshua Needelman, *3 Rikers Officers Charged With Covering Up Attack on a Detainee*, NY Times [Jan. 17, 2023], available at https://www.nytimes.com/2023/01/17/nyregion/rikers-officers-inmate-attack-cover-up.html [accessed March 2, 2024]). Thus, the fact of an injury treated at the NIC must have sent up red flags to the Rikers administration.

Petitioner alleged that his post-assault treatment at the Rikers infirmary generated medical reports regarding his injuries, which are in the City's possession. He also

specifically identified the officers that he alleged had direct personal knowledge of the facts underlying the incident. This evidence supports a conclusion that the City had actual knowledge of the facts constituting petitioner's tort claim. It also supports the conclusion that "the delay in serving the notice of claim" did not "substantially prejudice[ ] the [City] in maintaining its defense on the merits" (GML § 50-e [5]). As a final point, the record belies the majority's assertion that it "would be entirely speculative" to consider that any delay in filing a timely notice was due to Jaime's fear of retaliation. Jaime approached officials to seek protection because he feared an attack like the one that caused his injury. It is not speculation but rather acknowledgement of the realities of incarceration to infer that he feared retribution if he reported that officers and inmates attacked him.

The majority's primary disagreement with this reasoning is that Jaime's claims are mere allegations, rather than record evidence (*see* majority op at 14-15). In other words, while infirmary staff's knowledge of Jaime's injuries or medical documentation of the same might be sufficient to establish actual knowledge, the knowledge of infirmary staff ought to have been asserted in an affidavit or the records ought to have been sought through CPLR 409 (a). These formalities are not explicitly required by GML § 50-e (5) and I believe it is within the discretion of the trial court not to require them. Here, under the majority's analysis, all that may have been missing was a declaration from Jaime that he told the infirmary staff that his injuries were caused by a corrections officer.

On this record, the Appellate Division did not abuse its discretion in affirming Supreme Court's assessment of the factors for extending the time for Jaime to file a notice of claim. I dissent.

For No. 15: Order reversed, with costs, and petition to file a late notice of claim denied. Opinion by Judge Troutman. Judges Garcia, Singas, Cannataro and Halligan concur. Judge Rivera dissents in an opinion, in which Chief Judge Wilson concurs.

For No. 16: Order reversed, with costs, and petition to file a late notice of claim denied. Opinion by Judge Troutman. Chief Judge Wilson and Judges Garcia, Singas, Cannataro and Halligan concur. Judge Rivera concurs in result in an opinion.

Decided March 21, 2024