Duenas v New York City Health & Hosps. Corp. (2025 NY Slip Op 51273(U))

[*1]

Duenas v New York City Health & Hosps. Corp.

2025 NY Slip Op 51273(U)

Decided on August 13, 2025

Supreme Court, Kings County

Mallafre Melendez, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 13, 2025
Supreme Court, Kings County

Wilfredo Duenas, Plaintiff,

against
New York City Health and Hospitals Corporation, REBECCA KIM, M.D., CHOUMIKA SIMONIS, M.D., and NYU LANGONE MEDICAL CENTER, Defendants.

Index No. 501979/2025

Plaintiff
Sheldon Ethan Green, Esq. (sgreenlaw@gmail.com)
Sheldon E. Green, P.C.
566 Sunset Dr
Woodmere, NY 11598
516-569-3300
Defendant New York City Health and Hospitals Corporation
Kaitlin M. Kennedy, Esq. (kaitlin.kennedy@wilsonelser.com)
Wilson Elser Moskowitz Edelman & Dicker LLP
150 East 42nd Street
New York, NY 10017
212-490-3000
Defendants Rebecca Kim, M.D., Choumika Simonis, M.D., and NYU Langone Medical Center
Robert J. Cecala, Esq. (rjcecala@arfd.com)
Aaronson Rappaport Feinstein & Deutsch
600 3rd Ave
New York, NY 10016
212-593-6700

Consuelo Mallafre Melendez, J.

Recitation, as required by CPLR § 2219 [[a], of the papers considered in the review:
NYSCEF #s: 11 — 12, 13 — 19, 29 — 33, 34 — 41
Plaintiff moves (Seq. No. 1) for an Order, pursuant to Gen. Mun. Law § 50-e, granting leave to file a late notice of claim and deem the notice of claim timely served nunc pro tunc. Defendant New York City Health and Hospitals Corporation ("NYCHHC") opposes the motion.
The underlying medical malpractice claims arise from treatment and care rendered to Plaintiff from approximately March 22, 2019, through December 29, 2023, at Woodhull Medical and Mental Health Center, a NYCHHC facility.
Plaintiff received the majority of his medical care at Woodhull Medical Center from 2018-2023. In March 2019, he underwent PSA testing, a blood test that measures prostate-specific antigen (PSA) levels for early detection of prostate cancer. The results indicated that the patient had an elevated level of PSA at 5.5, where the normal range is below 4. Plaintiff continued to treat at Woodhull Medical Center as his primary care provider on multiple occasions through December 29, 2023. He alleges that no follow-up investigation, repeat PSA test, sonogram, or other workup ever occurred.
In January 2024, Plaintiff underwent an abdominal/pelvic CT scan at NYU Langone emergency department which revealed a mass. Plaintiff was subsequently diagnosed with Stage IV metastatic prostate cancer which had spread to multiple organs. At that time his PSA was measured at over 2,000. Plaintiff then began treatment at Mount Sinai Hospital. Plaintiff alleges that NYCHHC's employees and agents departed from the standard of care by failing to appropriately and timely investigate the patient's elevated PSA level.
The filing of a notice of claim against a municipal corporation, in compliance with Gen. Mun. Law § 50-e, is required within 90 days after the claim arises. Plaintiff served a notice of claim on Defendant NYCHHC on January 13, 2025. This application to deem service of the notice of claim timely nunc pro tunc was filed on March 21, 2025.
As an initial matter, Plaintiff's application for this relief is timely pursuant to the applicable statute of limitations period. Under Gen. Mun. Law § 50-e (5), the court has discretion to extend the time to serve a notice of claim, but that extension "shall not exceed the time limited for the commencement of an action by the claimant against the public corporation." As Plaintiff's action is based on an alleged failure to diagnose cancer or a malignant tumor, the limitations period is affected by CPLR 214-a (b), commonly known as "Lavern's Law."
That statute provides:
"[W]here the action is based upon the alleged negligent failure to diagnose cancer or a malignant tumor, whether by act or omission, the action may be commenced within two years and six months of the later of either (i) when the person knows or reasonably should have known of such alleged negligent act or omission and knows or reasonably should have known that such alleged negligent act or omission has caused injury, provided, that such action shall be commenced no later than seven years from such alleged negligent act or omission, or (ii) the date of the last treatment where there is continuous treatment for such injury, illness or condition." (CPLR 214-a [b].)
Since January 31, 2018, Lavern's Law controls the statute of limitations for medical malpractice claims based on the failure to diagnose cancer, on the basis that by the very nature of the claim, the injured party would be unaware of the negligent act or omission when it occurred, and they could only reasonably pursue their claim after the cancer or tumor was discovered, akin to discovery of a foreign object in the body under CPLR 214 (a). Thus, the statute of limitations begins to run from the date the plaintiff knew or reasonably shown have known of their [*2]undiagnosed cancer or tumor.
The Lavern's Law extension also applies to actions against NYCHHC, except that it is the Gen. Mun. Law § 50-i period of one year and ninety days which begins to run from the date of discovery or last date of continuous treatment, whichever is later. The 90-day notice of claim period also begins to run from the date of discovery or last date of continuous treatment, not the act or omission. (See CPLR 203 [g] [2]).
It is undisputed that Plaintiff's action against NYCHHC is grounded in an alleged failure to diagnose prostate cancer, and Defendants do not contest that Lavern's Law is applicable. Plaintiff's malignant mass was discovered on or about January 8, 2024, upon his CT scan at NYU Langone, and he was subsequently diagnosed with Stage IV metastatic cancer in the following days. Based on these dates, the statute of limitations for the claims against NYCHHC expired at earliest on April 8, 2025, and both the summons/complaint (January 20, 2025) and this motion to serve a late notice of claim (March 21, 2025) were timely filed. None of Plaintiff's treatment dates on which the relevant acts or omissions occurred, from March 2019 through December 2023, fall outside the seven-year window of Lavern's Law, regardless of whether the "continuous treatment" doctrine applies. Therefore, it is within the Court's discretion to consider granting Plaintiff an extension of time to serve the notice of claim or deem the January 2025 notice of claim timely nunc pro tunc.
As the Plaintiff has met the threshold issue of timeliness, the Court will next consider the factors for granting leave to serve a late notice of claim. "In determining whether to grant or deny leave to serve a late notice of claim, the court must consider in particular whether the municipality acquired actual knowledge of the essential facts constituting the claim within 90 days of the clam's accrual or within a reasonable time thereafter" (Jaime v City of New York, 41 NY3d 531, 540 [2024]). The court also considers other relevant facts and circumstances, particularly whether "the delay would substantially prejudice the municipality or public corporation in its defense" and whether the petitioner "demonstrated a reasonable excuse for the failure to serve a timely notice of claim" (Ibrahim v New York City Tr. Auth., 202 AD3d 786, 787 [2d Dept 2022]). "The presence or absence of any one of these factors is not dispositive" (Balbuenas v New York City Health & Hosps. Corp., 209 AD3d 642, 644 [2d Dept 2022], quoting Rodriguez v Westchester Med. Ctr. [WMC], 196 AD3d 659, 660 [2d Dept 2021]). However, "courts are to place a great weight" on the factor of actual knowledge (Jaime, at 540, quoting Beary v City of Rye, 44 NY2d 398 [1978]).
It is well established that "mere possession or creation of records does not ipso facto establish actual knowledge'" (Jaime, at 545, quoting Wally G. ex rel. Yoselin T. v New York City Health and Hosps. Corp., 27 NY3d 672, 677 [2016]). In the case of a medical malpractice claim, the records themselves must "evince that the medical staff, by its acts or omissions, inflicted [an] injury on plaintiff" (Wally G., at 677; Williams v Nassau County Med. Ctr., 6 NY3d 531, 537 [2006]).
In support of the motion, Plaintiff argues that Defendant NYCHHC had actual knowledge of the facts underlying the claim, as evinced by the medical records in their possession. Specifically, they submit extensive records from Woodhull Medical Center where the patient received the majority of his medical care from 2019-2023. On March 22, 2019, Plaintiff underwent a PSA test which was high at 5.51 (normal below 4). This result is recorded as abnormal/elevated multiple times in the records.
The Woodhull Medical Center records also reflect that "PSA elevation" was included in [*3]the patient's diagnoses and "active problem list" on at least four primary care visits between February 2021 and July 2022. However, his PSA levels were never retested, nor did he undergo a sonogram or any other workup.
Additionally, the Woodhull Medical Center records include an outgoing letter dated March 25, 2019 from nurse practitioner Soyoung Lee shortly following the PSA test results. The note reads: "Please schedule an appointment with urologist and do prostate sonogram ASAP." Plaintiff does not concede that this letter was received, and he notes that it was written in English without a Spanish translation. However, he argues that it is further evidence of Defendant's actual knowledge that Plaintiff required urgent follow-up.
The complete record provided by Defendants in opposition show the notation "PSA elevated" and "PSA elevation — chronic" was included as an active problem/diagnosis on multiple dates from September 2019 through December 2023, including visits with his primary care physician and with N.P. Lee, and the PSA elevation was later marked "resolved on 10/14/2022." Subsequent records from Woodhull Medical Center reflect that Plaintiff was diagnosed with "aggressive prostate cancer" in January 2024 and that he was being treated at Mount Sinai.
Based on these records, the Court finds that Plaintiff has demonstrated Defendant NYCHHC's actual knowledge of the essential facts underlying the claim. Although the mere creation of records does not constitute actual knowledge, here the details of Plaintiff's claim are apparent from the contemporaneous medical records on their face. The records show that he was known to have elevated PSA following his March 22, 2019 test and a nurse practitioner recommended a sonogram "ASAP," but although he underwent bloodwork and other tests on several occasions after that date, his PSA levels were never retested and there was no follow-up sonogram or other workup.
Further, the records evince that Woodhull Medical Center became aware of his cancer diagnosis in the beginning of 2024 and updated his patient file with that information on January 25, 2024 (cardiology) and April 3, 2024 (primary care clinic). This diagnosis was noted in the NYCHHC records within 90 days of the discovery of his malignant mass on January 8, 2024. Thus, all the facts underlying Plaintiff's claim — that his Woodhull Medical Center providers failed to appropriately follow up on his elevated PSA and this caused a delay in his cancer diagnosis — can be gleaned from their own records. The Court finds upon review of all the submissions, NYCHHC had contemporaneous actual knowledge of the facts underlying his potential malpractice claim.
Even in the absence of actual knowledge, the Court may consider whether the petitioner offered a reasonable excuse for the delay, supported by competent evidence (see generally Balbuenas, at 646-647 [2d Dept 2022]; Williams v Jamaica Hosp. Medical Center, 124 AD3d 636, 638 [2d Dept 2015]).
Plaintiff submits an affirmation which states that in January 2024 he was diagnosed with prostate cancer which had spread to his "ribs, spinal cord, lung and skull," and the following month he lost vision in his right eye. He avers that "since that time, I have been undergoing treatment for my Stage IV metastatic prostate cancer and it has completely taken over my life," and because of this, he and his family were unable to consult an attorney until January 2025. This affirmation is substantiated by the records from his lab tests and treatment at Mount Sinai. He also states that he was unaware of the notice of claim requirement. He first consulted with an attorney on January 3, 2025, formally retained counsel, and within the same week the late notice [*4]of claim was filed and this action was commenced.
In opposition, Defendant notes that ignorance of the notice of claim requirement is not a valid excuse for delay (see Vega v Inc. Vil. of Freeport, 164 AD3d 514, 515-516 [2d Dept 2018]). However, it is well established that ongoing medical treatment for one's alleged injury may constitute a valid excuse. "While the statute does not explicitly provide for the consideration of [reasonable excuse], the statute is non-exhaustive and this factor has firmly taken root in the case law" (Jaime, at 541). The Second Department has held that "even absent incapacitation, a reasonable excuse may be established by an allegation that a petitioner was more concerned and preoccupied with his or her alleged injuries or those of a spouse or child than with retaining counsel to pursue a legal claim," provided that "such an allegation is supported by medical evidence" (Balbuenas, at 646). In the Balbuenas case, the appellate court found the petitioner's mental health treatment for depression after her stillbirth was sufficient to show the delay was caused by her "emotional and psychological injuries and the accompanying preoccupation with her well-being," and the notice of claim was promptly filed once she retained counsel.
Here, although Plaintiff cites his unawareness of the law as one of the reasons he failed to file the notice of claim, he also sets forth that he was preoccupied with the spread and treatment of his cancer, and this initially prevented him from pursuing any legal claims. Once he obtained counsel approximately one year after his diagnosis, the claim was promptly pursued. The Court finds this demonstrates a reasonable excuse for the delay.
Finally, Plaintiff argues that NYCHHC would not be substantially prejudiced by the late notice of claim. On this issue, the plaintiff has the prima facie burden of presenting at least "some evidence or plausible argument that supports a finding of no substantial prejudice" (Newcomb v Middle County Cent. School Dist., 28 NY3d 455, 466 [2016]). Once this burden is met, the opposing party must make a particularized showing that they would be substantially prejudiced by the late notice of claim.
Plaintiff has met his burden of arguing that Defendants would not be substantially prejudiced by the delay from serving the notice of claim on January 13, 2025. This delay was approximately nine months, as the 90-day period expired in April 2024 following Plaintiff's cancer diagnosis. On this issue, Plaintiff argues that NYCHHC's actual knowledge of the facts negates any claim of substantial prejudice. He further argues that NYCHHC has the same ability to investigate and defend the claims now as they would if the notice of claim had been timely filed. They possess all the necessary records, the witnesses and personnel are clearly identified from Plaintiff's chart, and therefore "there is no possible claim of loss of records and the absence of witnesses."
Plaintiff's submissions have met the prima facie burden of "some evidence or plausible argument" that NYCHHC would not be prejudiced by the late notice of claim. Contrary to the Defendant's argument, the nine-month delay is not "by its very nature" prejudicial. In response to Plaintiff's prima facie showing, NYCHHC has not made any showing with particularized evidence of substantial prejudice caused by the delay, as required by the Court of Appeals (Newcomb at 467). Therefore, the Court finds there is no evidence of substantial prejudice.
In sum, the Court finds that Plaintiff has demonstrated that NYCHHC had actual knowledge of the facts underlying his claim, Plaintiff had a reasonable excuse for the delay, and there is no evidence of substantial prejudice to Defendants resulting from the delay. In [*5]consideration of all these factors, the motion for leave to file a late notice of claim is granted, and the notice of claim dated January 13, 2025 shall be deemed timely nunc pro tunc.
Accordingly, it is hereby:
ORDERED that Plaintiff's motion (Seq. No. 1) seeking an Order, pursuant to Gen. Mun Law § 50-e, granting leave to file a late notice of claim and/or deem the notice of claim timely filed nunc pro tunc, is granted; and it is further
ORDERED that the notice of claim served on or about January 13, 2025 is deemed timely nunc pro tunc.
This constitutes the decision and order of this Court.
ENTER.
Hon. Consuelo Mallafre Melendez
J.S.C.